694 So.2d 312 (1996)
Donna Hansman NUNGESSER
v.
Hugh Lester NUNGESSER.
No. 95 CA 2298.
Court of Appeal of Louisiana, First Circuit.
June 28, 1996.
Harry P. Pastuszek, Jr., Mandeville, for Defendant-Appellant.
*313 Mary D. Devereux, Covington, for Plaintiff-Appellee.
Before WATKINS and FOIL, JJ., and TANNER,[1] J. Pro Tem.
TANNER, Judge Pro Tem.
This is an appeal by the plaintiff-in-rule, Mr. Hugh Lester Nungesser, (Mr. Nungesser) of the trial court's denial of his rule to enforce a compromise agreement which he and his ex-wife, defendant, Donna Hansman Nungesser, (Mrs. Nungesser) had executed to terminate and partition their community property. At issue is the ownership of a certain parcel of immovable property which allegedly was transferred to Mr. Nungesser in the consent judgment.[2] After a thorough review of the record, we find that the trial court erred as a matter of law in denying the rule. Therefore, we reverse that judgment and hereby order that the proceeds in the registry of the court following the sale of the property be disbursed to Mr. Nungesser.

Background Facts and Procedural History
In 1987, the Nungessers separated and in 1988, they obtained a divorce. After long and protracted litigation, (See Nungesser v. Nungesser, 558 So.2d 695 (La.App. 1st Cir.), writ denied, 560 So.2d 30 (La.1990)), in August 1990, the parties entered into a consent judgment resolving all pending matters incidental to the divorce, terminating the community and partitioning all of the assets of their community of acquets and gains.
Approximately three years later, in 1993, Mr. Nungesser attempted to sell a parcel of immovable property which he believed had been transferred to him in the consent judgment. At that time, he discovered that, although the consent judgment purported to transfer to him all of the immovable property which formerly had been the site of the matrimonial domicile, located at 115 Live Oak Drive, Slidell, La., including the family home located thereon, the exhibit attached to and referenced in the consent judgment as containing the full property description inadvertently failed to include a legal description of the one-acre lot adjacent to the lot on which the family home was situated. This lot, designated as Lot 100, had been purchased during the existence of the community, but subsequent to the purchase of the adjacent parcel of land on which the family home was located. According to Mr. Nungesser, after the purchase of Lot 100, "[I]t was factually integrated into the family homestead by the continuation of the lawn over both parcels and the enclosure of both parcels by a single continuous fence."
In October, 1993, counsel for Mr. Nungesser contacted Mrs. Nungesser and requested that she execute an "Act to Reform Description" so that the exhibit describing the property would comply with the terms of the consent judgment. Mrs. Nungesser refused; this action ensued. In answer to Mr. Nungesser's rule, Mrs. Nungesser filed exceptions raising the objections of no cause of action and res judicata. The trial court, after the submission of numerous memoranda, but without a hearing, took the matter under advisement. Subsequently, the trial court denied Mr. Nungesser's rule to enforce the consent judgment and deemed Mrs. Nungesser's exceptions moot. Mr. Nungesser appealed.
Mrs. Nungesser did not answer the appeal or file a brief; however, in memoranda filed with the trial court, she asserted that contrary to the terms of the consent judgment, she and Mr. Nungesser secretly agreed to leave Lot 100 out of the partition, and therefore, they continue to be owners of that parcel of land in indivision. In pretrial deposition, Mrs. Nungesser asserted that Lot 100 had been given to her as a gift by Mr. Nungesser and was her separate property. However, it appears that the only argument asserted to the trial court on behalf of Mrs. Nungesser's position was that the lot, not *314 having been disposed of in the community property settlement, remains owned in indivision by the parties.

Applicable Law
The law is clear, and it is not disputed, that community property not disposed of by the community property settlement agreement remains owned in indivision by the parties. See Adams v. Adams, 503 So.2d 1052 (La.App. 2nd Cir.1987). Further, a compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. Bonaventure v. Pourciau, 577 So.2d 742 (La.App. 1st Cir.1991). The interpretation of the consent judgment (i.e. the contract between the parties) is the determination of the common intent of the parties. La.C.C. art. 2045. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982).

The Consent Judgment
The compromise agreement reached by the Nungessers forming the basis for the consent judgment rendered in this matter provides, in pertinent part as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the parties have terminated and divided the community of acquets and gains previously existing between them in the following way:
1. Hugh Lester Nungesser be and is hereby partitioned that immovable property therein and thereon located at municipal address 115 Live Oak Drive, Slidell, Louisiana, more fully described in Exhibit "1"[3], attached hereto.
* * * * * *
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that henceforth, each party shall own, free and clear of any claim of right, title, or interest, all of the property conveyed, transferred, or settled in this Consent Judgment, and neither party shall have any right or claim against the other related to the maintenance, operation, or revenues related to such asset.
* * * * * *
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party shall execute all documents effectuating or completing the transfers provided in this Consent Judgment immediately upon presentation to him or her, and any party refusing to do so and thereby necessitating legal action to enforce this shall pay all costs, including attorney's fees of any actions to enforce this agreement, and shall also be subject to the court's contempt powers.
* * * * * *
Finally, and most significantly, the consent judgment expressly states that the parties thereto represent,
[T]hat all of the assets of their community of acquets and gains are fully set forth herein; and that there are no other understandings and agreements between them except as set forth herein.
(Emphasis added).
We are presented with a contract in which the words are clear and explicit, and evidence an intent by the parties to effectuate a complete and final partition of all the community property. The only ambiguity in the contract is that exhibit "1," attached in conjunction with the provision transferring the immovable property to Mr. Nungesser, contains a property description of the 2.25 acre tract, but contains no description for Lot 100, the adjacent tract of land. When an ambiguity exists, in determining the true intent of the parties, courts should view the contract as a whole and not just the ambiguous clauses. Wilson Warehouse Co. of Texas, Inc. v. Maryland Casualty Co., 269 So.2d 562 (La.App. 1st Cir.1972). The contract as *315 a whole reveals an intent by the parties to resolve all issues relating to the termination of their community property regime. The contract also reveals the parties' intent to allocate designated movables equitably between them, and to transfer all immovable property interest and liabilities to Mr. Nungesser in an apparent exchange for a cash payment of $170,000.00 paid by Mr. Nungesser to Mrs. Nungesser. The application of the intent of the parties does not lead to absurd consequences; the division of property appears reasonable and equitable.
Mrs. Nungesser asserts that the omission of the property description for Lot 100 evidences the intent of the parties to remain owners in indivision of that parcel of land. Our review of the record and the consent judgment does not support such an assertion. Mrs. Nungesser admitted that she signed the agreement and was aware of its contents. In deposition, in an attempt to explain the discrepancy between her assertions and the clear language of the consent judgment, Mrs. Nungesser testified:
Q. Did you read the document?
A. Yes.
Q. Are you familiar with the fact that the document says there are no other agreements between you and Hugh? Are you familiar with that section?
A. Yes. I read that.
Q. And isn't it a fact that you told the court there were no other agreements at that time?
A. If I did, I did. It will be the first lie that I told. Certainly wouldn't have been the first lie the Nungessers told in the thing.
Mrs. Nungesser's explanation is unsupported by the record. In addition to the intent of the parties as determined from the terms of the contract, the record also contains the deposition testimony of Mr. Harold A. Asher, a financial adviser retained by Mrs. Nungesser during the pendency of the community property partition to value certain assets and to enter into negotiations on behalf of Mrs. Nungesser for the partition of the property. Mr. Asher testified that several unsuccessful attempts were made during these negotiations to have Mr. Nungesser agree to split the property and transfer Lot 100 to Mrs. Nungesser. Mr. Asher testified that he was unable to negotiate everything that Mrs. Nungesser had originally requested, including the splitting of the lots and the transfer to her of Lot 100, and he further testified that Mrs. Nungesser was aware of this fact. According to Mr. Asher, Mrs. Nungesser accepted and signed the agreement with complete awareness that it did not confer Lot 100 to her. Mr. Asher was not aware of any side agreement concerning Lot 100.
We are aware that our courts have been willing to consider community property which is inadvertently omitted from the community property settlement, and has not been contemplated or mentioned during negotiations, as a "mere omission" which can be amended by a supplemental partition. See Rollison v. Rollison, 541 So.2d 375 (La.App. 2nd Cir.1989). However, such is not the case in this matter. It is evident that the parties were fully aware of the existence of Lot 100, and indeed, it was the subject of negotiations leading up to the final document, which was agreed to and signed by the parties. See e.g. Chrisman v. Chrisman, 487 So.2d 140 (La.App. 4th Cir.1986). Despite the absence of the property description for Lot 100 in the attached exhibit, the consent judgment clearly confers the lot, as a portion of the immovable property comprising the family homestead, to Mr. Nungesser.
Accordingly, Mrs. Nungesser was bound by the provision in the agreement to "execute all documents effectuating or completing the transfer" of Lot 100 to Mr. Nungesser. The monies in the registry of the court representing the other one half of the proceeds generated by the sale of the property belong to Mr. Nungesser, and the clerk of the 22nd Judicial District Court is hereby ordered to release them to him. Further, in accordance with the consent judgment, Mrs. Nungesser is assessed all costs of this action, both in the district court and on appeal, as well as attorney's fees in the amount of $2,000. The judgment of the trial court is reversed.
REVERSED.
NOTES
[1] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] More precisely, since the property was sold during the pendency of this rule, the issue is which party is entitled to the proceeds of the sale of the property, which proceeds were deposited in the registry of the court pending resolution of the ownership issue.
[3] As noted earlier, exhibit "1" attached to the consent judgment contained a description of the 2.25 acre tract of land on which the family home was located, but failed to describe the one-acre contiguous tract of land (Lot 100).