| WILLIAMS, Judge.
The plaintiff, Sandra Faye Gulledge, filed a motion to set aside a consent decree in which she relinquished sole custody of her minor daughter, Megan Ashley Gul-ledge, to the defendant, David Allen Gul-ledge. The trial court denied the plaintiffs motion, finding that she had freely and voluntarily agreed to the consent decree and had stipulated that the defendant would be awarded the sole custody of their minor daughter. The plaintiff appeals the trial court’s judgment. For the following reasons, we affirm.
*1230 FACTS AND PROCEDURAL HISTORY Sandra and David Gulledge were married on November 12, 1982. The parties divorced on August 31, 1989. The divorce judgment awarded the parties joint custody of their minor child, Megan Gulledge. Sandra Gulledge was designated as the domiciliary parent and David Gulledge was awarded reasonable visitation rights. On May 23, 1990, the plaintiff filed a rule to modify the child support and custody judgment [1] and for past due child support. On March 3, 1993, the defendant filed a rule for contempt and for change of custody. The court consolidated these cases, thus creating the present case.
The trial court appointed a counselor, Dr. Daniel Prior, Ph.D., to evaluate the mental health of the parties and their minor child. Dr. Prior concluded that a serious problem existed concerning Megan’s mental health. On June 3, 1997, the trial court held a hearing to consider Megan’s welfare. The court ordered that the then current custody plan be maintained. The court also granted the plaintiffs request for an independent psychological evaluation and appointed psychologist, Dr. George Seiden, M.D., Ph.D., to conduct a psychiatric evaluation of all of the | ^parties and to determine whether Megan suffered from a mental illness which would require a change in her custodial situation as recommended by Dr. Prior.
A hearing was held on April 28, 1998[2]. The trial court considered the recommendations of Dr. Prior and Dr. Seiden and the stipulation of the parties concerning those recommendations. As a result, David Gulledge was granted the sole custody of Megan. Sandra Gulledge was granted supervised visitation on Saturdays.
Subsequently, the trial court rejected the plaintiffs motion to set aside the consent decree and the plaintiff applied to this court for supervisory writ. We remanded the cases and ordered the trial court to conduct an evidentiary hearing to determine whether Sandra Gulledge consented to the conditions of the consent decree entered into on April 28, 1998. Gulledge v. Gulledge, 31,765-CW consolidated with 31,766-CW, (La.App.2d Cir.8/27/98).
After the evidentiary hearing,' the trial court concluded that Sandra Gulledge understood and consented to the conditions of the consent decree. The plaintiff appeals.
THE LAW
Louisiana Civil Code article 3071 provides:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
| aA consent judgment is essentially a bilateral contract which is voluntarily signed by the parties and accepted by the court. It has binding force from the voluntary acquiescence of the parties, not from the court’s adjudication. Williams v. Williams, 586 So.2d 658 (La.App. 2d Cir.1991); Martin Forest Prod *1231 ucts v. Grantadams, 616 So.2d 251(La.App. 2d Cir.1993); Sigur v. Sigur, 94-1736 (La.App. 4 th Cir. 3/16/95), 652 So.2d 1046. Thus, “consent” judgments, as opposed to other final judgments which are rendered against a party without consent, may be annulled for error of fact or of the principal cause of the agreement. Williams v. Williams, supra.
DISCUSSION
The plaintiff contends that she did not consent to the stipulations of the consent decree, that instead, she was “railroaded” into accepting the conditions of the decree, and therefore, the trial court erred in denying her motion to set aside the consent decree or, in the alternative, to grant a new trial.
The stipulations which became the terms of the consent decree were based on the results of a psychological evaluation conducted by Dr. George Seiden. The results were presented in a written report and during his deposition taken on March 27, 1998. Dr. Seiden recommended that sole custody of Megan be granted to David Gulledge and that Sandra Gulledge be granted supervised visitation for at least one year. He also recommended family therapy for David Gulledge, his wife, Gaye, and Megan. Individual therapy was recommended for Sandra Gulledge with any change to unsupervised visitation contingent upon continuing, ongoing therapy.
During the hearing on the motion to set aside the consent decree, the plaintiff testified that, her attorney during these proceedings, Robert S. Noel, contacted her on the morning of the hearing to inform her that the hearing was scheduled for that day and the proceedings had begun. According to the plaintiff, Noel informed her that the court wanted to grant sole custody to the defendant and that if she did not consent, they would have to go to trial, and if they went to trial, they would lose. The plaintiff also testified that LNoel informed her that the court’s decision was based on Dr. Seiden’s deposition testimony. In sum, she argued that, although her attorney stipulated to the conditions of the consent decree during the hearing, she did not fully understand or agree to the conditions of the consent decree. She stated that she did not attempt to inform the trial court during the hearing that she did not agree with the stipulations because she was not aware that she could speak during the proceedings.
The plaintiff further testified that she did not receive a copy of Dr. Seiden’s deposition transcript prior to the hearing and she was not aware of Dr. Seiden’s recommendation that her ex-husband be granted sole custody of Megan. However, she testified that, on February 27, 1998, approximately two months prior to the hearing, the plaintiffs attorney provided her with a copy of Dr. Seiden’s report and discussed its contents. She testified that she was aware of Dr. Seiden’s recommendations and that she believed that his report and the transcript of his deposition contained basically the same information. She also testified that her attorney explained to her the significance of the consent decree before she arrived at court on the day of the hearing.
The record reflects that the recommendations presented in Dr. Seiden’s report are identical to those expressed in his deposition. Further, the plaintiff was aware of the recommendations presented in Dr. Seiden’s deposition and she was informed of the consequences of the consent decree prior to the hearing.
After a thorough review of this record, including the transcript of the stipulations and the subsequent hearing, we conclude that the plaintiff failed to prove that she did not understand the stipulations of the consent judgment or that she did not freely and voluntarily agree to its terms. Therefore, the trial court did |snot err in denying plaintiffs motion to set aside the consent decree or for a new trial.
This assignment of error is without merit.
*1232 CONCLUSION
For the foregoing reasons, the judgment of the trial court denying plaintiffs motion to set aside the consent decree or for a new trial is affirmed. All costs are assessed to the plaintiff, Sandra Faye Gul-ledge.
AFFIRMED.

. Judgment modifying the August 1989 custody decree was rendered on January 24, 1990. The modified judgment addressed specific issues in detail, including guidelines for overnight, out of town visits, visitation privileges for major holidays, joint decision making and medical and dental responsibilities.

. The initial hearing was recessed pending the completion of the psychological evaluations. The matter was refixed for March 12, 1998 and ultimately continued until April 28, 1998.