930 So.2d 51 (2006)
Tammy SUTHERLIN
v.
William Elliott SUTHERLIN, Jr.
No. 05-CA-535.
Court of Appeal of Louisiana, Fifth Circuit.
February 3, 2006.
*52 Gerald J. Arceneaux, Attorney at Law, Marrero, Louisiana, for Plaintiff/Appellee.
Marcus T. Foote, Attorney at Law, Baton Rouge, Louisiana, for Defendant/Appellant.
Panel composed of Judges JAMES L. CANNELLA, MARION F. EDWARDS and SAM A. LeBLANC, III, Pro Tempore.
SAM A. LEBLANC, III, Judge Pro Tempore.
Defendant, William Elliot Sutherlin, Jr., appeals a judgment that he owes plaintiff, Tammy Sutherlin, interim spousal support arrearages. For the following reasons we affirm.
Plaintiff and defendant voluntarily entered into a consent judgment dealing with their community assets and liabilities on June 20, 2002. They were subsequently divorced by judgment rendered September 14, 2002. Both parties later filed pleadings seeking enforcement of the consent judgment. One of plaintiff's contentions was that, pursuant to the consent judgment, defendant owed a remaining balance of $4,000.00 in spousal support.
The matter was heard on August 16, 2004. On December 13, 2004 the trial court issued a judgment stating, in pertinent part, that defendant owes plaintiff $2,290.00 in interim spousal support arrearages[1]. It is from this judgment that defendant appeals.
Defendant asserts that the trial court erred by ignoring the "plain language" of the consent judgment as well as evidence and the obvious intent of the parties. We disagree.
The consent judgment reads in pertinent part:
William Sutherlin will pay a total one year of spousal support to Tammy Sutherlin at a total sum of $28,000.00 dollars beginning from the date of filing by Tammy Sutherlin ...
William Sutherlin will receive a credit for $12,000.00 dollars in support payments already paid ...
This is to be a full and final settlement of any and all outstanding issues regarding any community assets or liabilities of the parties.
Defendant argues that the consent judgment was negotiated in April 2002 and that the "credit for $12,000.00 dollars in support payments already paid" did not take into account the fact that more had been *53 paid via income assignment by the actual signing date of June 20, 2002. Defendant asserts that the trial court should have corrected this "obvious drafting error" rather than "pretend" an error did not exist, leading to absurd consequences.
The trial court disagreed, finding that the effective date of the consent judgment is as of the date of the signing, June 20, 2002, not April[2] and crediting defendant only for those spousal support payments received by plaintiff after June 20, 2002.
Regarding not giving defendant further credit for payments made prior to the June consent judgment, the trial judge stated:
The reason for that is the judgment specifically states a June date, and those payments were made prior to June ... very easily could reference the twelve thousand dollars; so I can't give it to him.
Additionally, the record includes a letter from defendant's counsel to plaintiff's counsel, dated June 19, 2002, one day before the June 20, 2002 consent judgment, which states, in pertinent part:
My client indicates that he is agreeable to a settlement amount of $28,000 provided your client will grant him a $12,000 credit for all payments made to date. He is willing to accept this credit in exchange for cessation of the wage assignment.
(emphasis added)
A consent judgment is a transaction or compromise between parties who prevent or put an end to a lawsuit by adjusting their differences by mutual consent, balancing the hope of gain against the fear of loss. Millet v. Millet, 04-406 (La.App. 5 Cir. 10/26/04), 888 So.2d 291, 293. A compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. Nungesser v. Nungesser, 95-2298 (La.App. 1 Cir. 6/28/96), 694 So.2d 312, 314. The interpretation of the consent judgment is the determination of the common intent of the parties. Id. The meaning and intent of the parties is ordinarily determined from the four corners of the instrument. Millet, supra. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. Nungesser, supra. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. Id. Public policy favors these compromise agreements and the finality of the settlements. Millet, supra.
In this case, defendant voluntarily entered into a consent judgment with plaintiff in June of 2002, stipulating that defendant would pay plaintiff a total of $28,000.00 in support payments. The parties further stipulated that defendant would be given a credit of $12,000.00 in payments already made. Louisiana jurisprudence has long recognized that signatures to an instrument are not mere ornaments. First South Farm Credit, ACA v. Gailliard Farms, Inc., 38-731 (La.App. 2 Cir. 8/18/04), 880 So.2d 223; Tweedel v. Brasseaux, 433 So.2d 133 (La.1983); Boullt v. Sarpy, 30 La.Ann. 494. Had defendant found the provisions of the consent judgment to be incorrect he did not have to sign it. Defendant chose to enter into the consent agreement as drafted, as did his attorney.
*54 Therefore we find the trial court did not err when it found that defendant owed interim spousal arrearage. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] We note that the transcript indicates that the trial judge ruled that defendant owes plaintiff $2,250.00. However, appellant explains in brief that the reason for the difference is a mathematical error corrected prior to submission of the judgment.
[2] As typed, the consent judgment states "Gretna, Louisiana this ____ day of April, 2002. "20" is written in the blank by day and "April" has been scratched out and "June" written above it.