KUHN, J.
12Appellants, L.D. and F.D., the adoptive parents of the child, C.S., have suspensively appealed the juvenile court’s judgment, which granted specified, supervised visitation to the biological father of C.S.[1] We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
C.S. was born on January 26, 2005. Her parents, M.S. and B.R., apparently never married. B.R.’s paternity was established after a test determined he was the biological father. Six weeks after birth, C.S. entered the home of the maternal grandmother, F.D., and her husband, L.D., who have been caretakers and the source of support for C.S. since that time. A Department of Social Services, Office of Community Service case was opened in the matter, and a termination of parental rights hearing was scheduled.
On November 17, 2006, the juvenile court judge overseeing the termination *40 proceeding signed a consent judgment in which the parental rights of M.S. and B.R. were “terminated so that the child (C.S.) may be adopted by [L.D.] and [F.D.] with an open adoption.” L.D. and F.D. were expressly “granted the permanent care, custody and control of the minor child ... subject to reasonable, supervised visitation by [M.S.] and [B.R.], to be supervised by the court should the parties be unable to agree to the visitation schedule.” The consent judgment was submitted and signed by the attorney for L.D. and F.D. and approved as to form and content by the biological parents’ counsel.
|sOn May 21, 2007, a final decree of adoption was rendered in favor of L.D. and F.D., and the child’s last name was changed to theirs.
On July 9, 2007, B.R. filed a rule for a detailed visitation and, on October 19, 2007, M.S. filed her rule seeking the same relief for herself. Each rule stated that M.S. and B.R. had agreed to voluntarily terminate their parental rights with the understanding that they would have regular visitation with C.S. Because both M.S. and B.R. have other children, they hoped that regular visitation would foster relationships between C.S. and her half-brothers and half-sisters. According to the allegations in their rules, in voluntarily surrendering their respective parental rights, each parent understood that visitation would commence as supervised and hopefully move to unsupervised. Although visitation worked well for awhile, they each alleged in their rules that L.D. and F.D. refused to set a fixed visitation schedule, requiring B.R. and M.S. to initiate weekly contact to determine appropriate times. Over time, L.D. and F.D. refused M.S. and B.R. visitation with C.S. and would not return B.R.’s calls.
A hearing was held on B.R.’s rule on October 5, 2007. In a judgment signed on November 9, 2007, the juvenile court ordered “that B.R. shall be granted supervised visitation of the minor child, [C.S.], two Thursdays per month for one hour during the month of October, 2007. The tentative time shall be from 6:30 p.m. until 7:30 p.m.” The judgment additionally ordered “that B.R. shall be granted supervised visitation of the minor child, [C.S.], two Thursdays per month for two hours during the months of November and December of 2007 or until changed by this Honorable Court. The tentative time shall be from 5:30 p.m. until 147:30 p.m.” Lastly, the judgment ordered “that this matter shall be reviewed on December 7, 2007 at 9:00 a.m.”
On November 21, 2007, L.D. and F.D. filed peremptory exceptions raising objections of no cause and no right of action directed against the rules filed by M.S. and B.R.[2] The hearing on the exceptions was held on December 7, 2007, after which the juvenile court overruled the exceptions, stating that it did not rule on what may be in the best interest of the child since that issue was not presented.[3]
On December 19, 2007, L.D. and F.D. filed with this court an application for a supervisory writ seeking a reversal of the *41 juvenile court’s ruling. The juvenile court stayed “all further proceedings in this matter ... pending the resolution of said writ application.” On the same day that they sought a writ application, L.D. and F.D. also filed a suspensive appeal of the juvenile court’s November 9, 2007 judgment ordering specified, supervised visitation in favor of B.R.[4]
On April 1, 2008, this court denied the writ application. Another panel of this court stated:
WRIT DENIED. The Consent Judgment dated November 17, 2006, terminated the parental rights of the biological parents so that |athe minor child could be adopted with an open adoption, and the adoptive parents were granted the permanent custody of the child subject to reasonable supervised visitation by the biological parents to be supervised by the court if the parties were unable to agree. In light of the Consent Judgment, we find that the trial court did not abuse its discretion in denying relators’ Exceptions of No Cause and No Right of Action.
State in the Interest of C.S., 2008-0164 (La.App. 1st Cir.4/1/08) (an unpublished writ action).
On February 24, 2010, a deputy for the clerk of court certified a true, correct and complete record.[5] And on April 23, 2010, this court certified the timely lodging and perfecting of the appeal of the November 9, 2007 judgment.
DISCUSSION
Appellants contend the November 9, 2007 judgment “grant[s] visitation to the biological parents.” We initially note that the record clearly shows the only matter taken up at the October 5, 2007 hearing was B.R.’s rule. Thus, appellants have overstated the scope of the judgment they have appealed to include M.S. Insofar as the provisions of the judgment, it contains four paragraphs. The first orders a Court Appointed Special Advocate (CASA) representative “to supervise the visitation” of C.S. with B.R. The second and third paragraphs order “that B.R. shall be granted supervised visitation” for specified dates and times in October, November and December 2007. The final paragraph sets a review of “this matter” for December 7, 2007.[6]
|Jn challenging the juvenile court’s determination that B.R. was entitled to supervised visitation with C.S., L.D. and *42 F.D., contend that with the final decree of adoption, any post-termination continuing contact set forth in the judgment that terminated B.R.’s parental rights ceased to operate as a matter of law. Specifically, they aver that this result follows from an application of La. Ch.C. arts. 1038 and 1037.1, as well as the provisions of La. C.C. art. 199.[7] Additionally, they urge that the requirements for the limited post-adoption contact permitted under La. Ch.C. art. 1269.3 have not been fulfilled.[8]
According to the relevant provisions of La. Ch.C. art. 1038:
A final judgment terminating parental rights relieves the child and the parent against whom the judgment is rendered of all of their legal duties and divests them of all of their legal rights with regard to one another except as provided in Article 1037.1.............. [9]
]7La. Ch.C. art. 1037.1 provides:
A.Subsequent to a termination of parental rights judgment when custody is granted to the department, the court may order continuing contact between the child and the parent, sibling, or other biological relative. The court may grant such an order only after it makes finding of fact that continuing contact is in the best interest of the child. The court may receive expert testimony on the issue of continuing contact.
B. Any order for continuing contact shall remain in effect until the order is modified in accordance with Paragraph C of this Article, or the final decree of adoption is rendered.
C. Any order of continuing contact remains modifiable and shall be reviewed in the subsequent hearings required by Chapter 10 of this Title.
And La. C.C. art. 199 states:
Upon adoption, the adopting parent becomes the parent of the child for all purposes and the filiation between the child and his legal parent is terminated, except as otherwise provided by law. The adopted child and his descendants retain the right to inherit from his former legal parent and the relatives of that parent.
Preliminarily, we find that La. Ch.C. art. 1037.1 is inapplicable as it addresses “continuing contact” subsequent to a termination of parental rights judgment when custody is granted to the department. The 2006 consent judgment that terminated B.R.’s parental rights granted the permanent care, custody, and control of C.S. to L.D. and F.D., not to the Louisiana Department of Social Services. See La. *43 Ch.C. art. 1008(6). Additionally, as noted in the 1997 Official Comment (b) to Article 1087.1, the term “continued contact” is used rather than “visitation” in order to minimize any possible construction that reciprocal rights between parent and child are created. And Official Comment (a) points out that with regard to the continued contact referenced in Article 1037.1, maintaining some limited contact with the parent may be critical to the child’s adjustment in Isfoster care while awaiting transition to a permanent home through adoption. Thus, the continuing contact addressed in Article 1037.1 differs significantly from the “supervised visitation” provided for in the November 2006 consent judgment. Insofar as an application of La. C.C. art. 199, appellants have correctly asserted that the filiation between the child, C.S., and her legal parent, B.R., was terminated when she was adopted in 2007, but in light of the provisions of the consent judgment, that is not the end of our discussion since Article 199 recognizes exceptions to the termination when provided by law.
As we have already noted, this matter commenced as an involuntary termination of parental rights. But by agreement of the parties, a consent judgment was entered into.
A compromise agreement that forms the basis for a consent judgment gets its binding force and effect from the consent of the parties Nungesser v. Nungesser, 95-2298, p. 3 (La.App. 1st Cir.6/28/96), 694 So.2d 312, 314. The interpretation of the consent judgment (i.e. the contract between the parties) is the determination of the common intent of the parties. La. C.C. art. 2045; Nungesser, 95-2298 at pp. 3-4, 694 So.2d at 314. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. Id., 95-2298 at p. 4, 694 So.2d at 314.
Our examination of the consent judgment entered into by the parties expressly noted that all parties and their attorneys were present in court; it was signed by the attorneys; and, according to the juvenile court judge overseeing the | {¡proceeding, it was rendered after reviewing the testimony of the parties and witnesses, representation of counsel, the agreement reached by the parties, and the pleadings. It clearly and unambiguously stated that L.D. and F.D. were “granted the permanent care, custody and control of the minor child ... subject to reasonable, supervised visitation by [M.S.] and [B.R.], to be supervised by the court should the parties be unable to agree to the visitation schedule.” (Emphasis added.) Therefore, the provisions of the consent judgment should be enforced according to its terms. We note that the visitation specified in the consent judgment does not violate public policy. See La. Ch.C. art. 1269.1 (permitting contact between the adopted child and biological relatives).
L.D. and F.D.’s assertion that the provisions of La. Ch.C. art. 1269.3 preclude visitation by B.R. likewise fails. Article 1269.3, which permits continuing contact agreements and specifies the requisites for such agreements, provides in relevant part:
A. Every post-adoption contact agreement shall be in writing and signed by the adopting parents and by any adult granted contact.
E. Every agreement, in order to be enforceable in accordance with Article 1269.8, must recite the following declarations:
*44 (1) The parties have freely and voluntarily entered into the agreement and it reflects their intent to be bound by its terms, unless later modified by a replacement agreement or by court order.
(2) The ... parent ... by blood ..., or his representative, if any, has been counseled and advised ... by counsel, or by other appropriate professional about the meaning of these declarations and the effects of a continuing contact agreement and each has had the opportunity to have the agreement reviewed by his counsel.
(3) The ... parent ... by blood ..., or his representative, has been informed and understands that upon the execution of the agreement, any dispute or litigation regarding its terms shall not | inaffect the validity of any surrender, termination of parental rights, adoption, or custody of the adopted child.
(4) The adopting parents have been informed and understand that the ... parent ... by blood ... may seek enforcement of the terms of the agreement in accordance with Article 1269.8.
The assertion made by L.D. and F.D. overlooks that Article 1269.8 applies to post-adoption agreements. The consent judgment providing B.R. with supervised visitation was entered into simultaneously with the termination of his parental rights and prior to the adoption of C.S. by L.D. and F.D. Indeed, L.D. and F.D. were expressly granted the permanent care, custody, and control of C.S. subject to reasonable, supervised visitation. Accordingly, appellants’ reliance on Article 1269.3 is misplaced.
DECREE
Considering the foregoing and this court’s earlier ruling on the writ,[10] the juvenile court’s judgment is affirmed.[11] Appeal costs are assessed against L.D. and F.D.
AFFIRMED.

. As provided in La. U.R.C.A. Rule 5-2. we refer to the parties in this termination of parental rights/adoption case by their initials to protect the interests of the child and to ensure confidentiality.

. Although B.R.’s rule had been heard and judgment rendered, the exceptions against B.R. were apparently directed to the court’s order of review of the rule filed by B.R. pursuant to the November 9, 2007 judgment.

. On December 7, 2007, the juvenile court judge signed a document entitled "Judgment and Reasons for Judgment,” detailing his reasons for overruling the exceptions. On December 19, 2007, the juvenile court judge signed another document entitled "Amended Judgment and Reasons for Judgment.” Except for the dates, the two documents appear to be identical. A document entitled, "Judgment,” overruling the exceptions without reasons, was signed on January 18, 2008.

. The record shows that a notice of judgment of the November 9, 2007 judgment was never issued by the clerk of court for the juvenile court. Thus, appellants' appeal was timely. See La. C.C.P. arts. 1913, 1974, and 2123; see also Ch.C. art. 1261.

. While the juvenile court’s order granting an appeal of the November 9, 2007 judgment set the return date in this appeal for February 18, 2008, nothing in the record explains the reason that it was not certified by a deputy for the clerk of the district court until over two years after the return date.

. Courts will not decide abstract, hypothetical, or moot controversies, or render advisory opinions. However, there are exceptions to the mootness doctrine. In particular, a court should consider whether there is any reasonable expectation that the complained-of conduct will recur. Louisiana State Bd. of Nursing v. Gautreaux, 2009-1758, pp. 2-3 (La.App. 1st Cir.6/11/10), 39 So.3d 806. Because the challenged action was too short to be fully litigated prior to the lapse of the visitation ordered in the November 9, 2007 judgment, and while the dates for the specified visitation have lapsed, since there was, at the time the appeal was filed, a reasonable expectation that L.D. and F.D. would be subjected to further orders of supervised visitation of C.S. by B.R., we find that it falls within the perimeters of the exceptions to the mootness doctrine. See Louisiana State Bd. of Nursing, 2009-1758 atp. 3, 39 So.3d at 812.

. In brief, appellants refer to the former provisions of La. C.C. art. 214, as they appeared pursuant to La. Acts 1995, No. 1185, § 1. Article 214 was amended by La. Acts 2008. No. 351, § 1 and presently addresses adult adoptions. La. C.C. art. 199 was enacted pursuant to La. Acts 2009, No. 3, § 1, which provided that the provisions of the act relative to the enactment of Article 199 were "curative and remedial and therefore shall be applied retroactively to January 1, 2009.” Thus, we substitute the provisions of Article 199 in addressing appellants’ assertions about Article 214.

. Although in brief, appellants cite La. Ch.C. art. 1269.2, by La. Acts 2008, No. 583, § 2, that article was redesignated as La. Ch.C. art. 1269.3. And while Article 1269.2 was amended prior to its redesignation, that amendment did not affect the provisions relied upon by appellants in asserting their argument.

.The provisions of La. Ch.C. art. 1038 are similar to the provisions of former La. C.C. art. 214 that appellants rely upon in challenging the November 9, 2007 judgment in that former Article 214C provided, "the blood parents or parents and all other blood relatives of the adopted person ... are relieved of all of their legal duties and divested of all of their legal rights with regard to the adopted person.”

. Under the law-of-the-case doctrine, an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Capitol House Preservation Co., LLC. v. Ferryman Consultants, Inc., 98-2216, p. 6 n.8 (La.App. 1st Cir.11/5/99), 745 So.2d 1194. 1197 n.8, writ denied, 99-3446 (La.2/11/00), 754 So.2d 937. This doctrine applies with equal force to writ decisions as it does to judgments rendered at the conclusion of the appellate process. Dupre v. Maynard, 96-1183, p. 3 (La.App. 1st Cir.3/27/97), 692 So.2d 36. 38, writ denied, 97-1508 (La.9/26/97), 701 So.2d 986.

. Because a best-interest determination has not been undertaken of the rights derivative from the consent judgment, if the supervised visitation that the parties agreed to is no longer in the best interest of CS, nothing precludes appellants from bringing a rule against BR (and MS) to terminate visitation.