WINDHORST, J.
I,The parties, Leslie Billiot and Michael Plambeck, who were never married, resided together from February of 1996 until April of 1997. They had one child, born on September 17, 1997. On October 22, 1997, Ms. Billiot filed a petition to set child support. By judgment dated March 30, 1999, the parties were awarded joint custody with Ms. Billiot designated as the primary, domiciliary parent.
*381 On December 14, 2001, a Consent Judgment was rendered that provided Dr. Plambeck with 50% physical access and custody of the child. The Judgment further provided that:
The parties specifically agree that the minor child, Logan Plambeck and his mother, Leslie Ann Billiot, shall reside at the physical address of # 12 Acadia Street, Kenner, Louisiana, which is the separate and paraphernal immovable property owned by Michael Kent Plam-beck, D.C. Leslie Ann Billiot agrees to take occupancy of said residence not later than December 12th [.] ... Leslie Ann Billiot agrees, as a specific consideration of Michael Kent Plambeck’s, D.C. dismissing his pending rule to change custody filed September 17, 2001, that Leslie Ann Billiot shall remain at # 12 Acadia Street, Kenner, Louisiana until such time as the minor child attains the age of legal majority (eighteen (18) years of age).
⅜ ⅜ ‡
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event Leslie Ann Billiot maintains her residency on a fulltime basis with the minor child, Logan Plambeck, until Logan Plambeck attains the age of majority (eighteen (18) years of age), at # 12 Acadia Street, Kenner, Louisiana, without interruption, Michael Kent Plam-beck, D.C. shall agree to pay unto Leslie Ann Billiot fifty per cent (50%) of the current market value of # 12 Acadia Street, Kenner, Louisiana, at that time.
The Judgment also states that “This provision [that Ms. Billiot reside at # 12 Acadia Street until the child reached the age of 18] is designed to insure the close physical ‘proximity’' of Michael Kent Plambeck, D.C. with his minor child at all times during the child’s minority[J” The Consent Judgment did not change Ms. Billiot’s designation as the primary domiciliary parent.[1]
l2On September 17, 2015, the child reached eighteen years of age. On November 4, 2015, Ms. Billiot filed a rule for contempt, alleging that despite the fact that the child had reached the age of majority, Dr. Plambeck failed to comply with the Consent Judgment of December 14, 2001, which required an appraisal of the house and payment to her of one-half of its value.
Dr. Plambeck opposed the motion for contempt, arguing that Ms. Billiot had not fulfilled the terms of the Consent Judgment because the child had resided with him in Florida for a period of six to eight weeks, and that, during that time period, it was the intent of the parties that the child would permanently reside with him. According to Dr. Plambeck, this eight-week time period reflects a breach of the Consent Judgment’s requirement that Ms. Bil-liot “maintain her residency on a fulltime basis with the minor child ... without interruption^]”
. After a hearing, the trial court rendered judgment on January 5, 2015, ordering that within thirty days, the house shall be appraised and Dr. Plambeek was to pay half of its value to Ms. Billiot. The court declined to hold Dr. Plambeck in contempt in court. Dr. Plambeck appeals from this decision of the trial court.
In Rousset v. Rousset, 14-663 (La.App. 5 Cir. 4/15/15), 170 So.3d 253, 256, this Court summarized the law applicable as follows:
A consent judgment is a bilateral contract wherein the parties adjust their *382 differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. LSA-C.C. art. 3071. As such, it should be governed by the same rules of construction that apply to contracts. Nelson v. Nelson, 08-85 (La.App. 5 Cir. 6/19/08), 985 So.2d 1285, 1290. A compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. The interpretation of •the consent judgment is the determination of the common intent of the parties. LSA-C.C. art. 2045; Nungesser v. Nungesser, 95-2298 (La.App. 1 Cir. 6/28/96), 694 So.2d 312, 314. The meaning and intent of the parties is ordinarily determined from the four corners of the instrument. Millet v. Millet, 04-406 (La.App. 5 Cir. 10/26/04), 888 So.2d 291, 293. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract |sas a whole. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. LSA-C.C. art. 2046; Sutherlin v. Sutherlin, 05-535 (La.App. 5 Cir. 2/3/06), 930 So.2d 51, 53.
When the language of a contract is ambiguous it is proper to go outside the four corners of the instrument and use extrinsic evidence to determine the parties’ intent. Nelson v. Nelson, 985 So.2d at 1290. LSA-C.C. art. 2053 provides that “a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.”
‘Whether a contract is ambiguous or not is a question of law. Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown.” G.A. Lotz Co. v. Alack, 13-674 (La.App. 5 Cir. 4/9/14), 140 So.3d 94, 103. At issue was the intent of the parties, as reflected in the contractual provision that “Leslie Ann Billiot maintains her residency on a fulltime basis with the minor child, ..., until [the child] attains the age of' majority (eighteen (18) years of age), at # 12 Acadia Street, Ken-ner, Louisiana, without interruption” and whether Ms. Billiot fulfilled that term of the Consent Judgment. We find the term ‘without interruption” in the Consent Judgment to be ambiguous, because reasonable minds could differ as to whether the child’s six to eight week visit with his father in Florida constitutes the type of “interruption” that the parties contemplated in the judgment. It was therefore not error for the trial court to consider extrinsic evidence, outside the four corners of the Consent Judgment, in order to determine the parties’ intent.
The evidence at the hearing established that, although his intent in the Consent Judgment was to provide a residence for the child near his own house, so that he would reside close to, and have more access to, the child, Dr. Plambeck moved to Florida when the child was thirteen years of age, and that the child travelled to Florida for visitations after that time period.
4In November of 2014, when the child was seventeen, he went to Florida and spent six to eight weeks at his father’s, Dr. Plambeck’s, residence. Ms. Billiot testified that the child went to Florida because he wanted to go and try to live with his father. She did not want him to leave, but she let him go. The child’s attempt to reside with his father was unsuccessful and he returned home in January of 2015.
*383 Ms. Billiot testified that, during the period of time that the child was in Florida, she continued to maintain a residence for him at # 12 Acadia Street. Furthermore, Ms. Billiot had resided at # 12 Acadia Street continuously from the time of the Consent Judgment until they were evicted after the child turned eighteen. Ms. Billiot also stated that she always had a place for her son to live with her, and still had a place for him to reside with her at the time of trial.
Dr. Plambeck testified that it was the parties’ intent that the child live permanently with his father when the child first moved to Florida, although the child later changed his mind and returned home. As evidence of intent, Dr. Plambeck points to Ms. Billiot’s actions in notifying Archbishop Rummel High School that the child would no longer be attending, and his actions in enrolling the child in school and paying the tuition. However, when the child returned to Ms. Billiot’s house, she immediately enrolled him in Crescent City High School. When she requested records from the school in Florida, she received the response that he had not been in school long enough to receive any grades.
In explaining his understanding of the Consent Judgment, Dr. Plambeck stated that he believed that his obligation, after the child turned eighteen, was that “if Leslie [was] living in the house without interruption and we were to go together and get an appraisal that we agreed on. And then from there, I would pay her half the value of the house.” While Dr. Plam-beck contended that his son’s “move” to Florida breached the Consent Judgment, he apparently believed that Ms. Billiot lfiwas still entitled to one-half of the proceeds from the sale of the house even after the child returned from Florida, as evidenced by a text message to Ms. Billiot from Dr. Plambeck, discussing the purchase of a car for the child. The text message sent by Dr. Plambeck states “I will give you the cost of the car against your half of the proceed (sic) when we sell the house. You can put it up for sale anytime and I will give you half of the money we are left with after the sale.”[2]
Moreover, the Consent Judgment clearly states that the purpose of the provision rewarding Ms. Billiot for residing and remaining in the Acadia Street house until the child reached 18 was to assure his “close physical proximity” to Dr. Plam-beck. Having his son temporarily reside with him in Florida did not defeat or undermine the stated purpose of the Consent Judgment, but enhanced it.
We also consider that, although Dr. Plambeck states that it was the parties’ intent that the child move permanently to Florida, there is nothing in the record to show that either parent sought an amendment to the original custody decree that named Ms. Billiot as the primary domiciliary parent.
The trial court, in reasons for judgment, said that
The language of the judgment is that that (sic) at the time Billiot maintain her residency on a full-time basis with the child and the law provides for dual residency and it’s clear ... that Ms. [Billi-ot’s] intent was always to maintain her residency with the minor child at No. 12 Acadia Street in Kenner. And this court is of the opinion that it is Ms. [Billiot’s] intent that it is determinative of where her and her son’s residency was established.
*384 So while the Court has no doubt that the minor child did, in fact, live for whether it was a six- or eight-week period of time with Dr, Plambeck in Florida, this Court does find the fact that Ms. [Billiot] did, in fact, maintain her residency with the minor child there at No. 12 Acadia Street.
After consideration of the evidence introduced, and the applicable law, we do not find that the trial court was manifestly erroneous in this determination. We [ (¡affirm the judgment of the trial court which ordered an appraisal of the house at # 12 Acadia Street, and that Dr. Plambeck pay half of the value to Ms. Billiot.
All costs of this appeal are assessed against appellant, Michael Kent Plambeck, D.C.
AFFIRMED

. Ms. Billiot subsequently married, and later pleadings in the record name her as "Leslie Ann Billiot Hodges.” For consistency, we refer to plaintiff herein as Ms. Billiot.

. Although the picture of the text is undated, testimony indicated that the text was sent on October 1, 2015, after the child returned from Florida, but prior to the filing of the Rule for Contempt.