| | | |
|---|---|---|
| YVONNE GUERINGER BACCHUS | * | NO. 2022-C-0170 |
| | * | |
| VERSUS | * | COURT OF APPEAL |
| | * | |
| MARCEL A. BACCHUS, M.D. | * | FOURTH CIRCUIT |
| | * | |
| | | STATE OF LOUISIANA |

* * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2000-16295, DIVISION "I-14"
Honorable Lori Jupiter, Judge
* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Paula A. Brown)

Sondra Allen-Borne
THE LAW OFFICE OF SONDRA ALLEN-BORNE, LLC
1615 Poydras Street, Suite 900, #154
New Orleans, LA 70112

        COUNSEL FOR PLAINTIFF/RESPONDENT



Robert C. Lowe
David M. Prados
Melanie C. Lockett
LOWE, STEIN, HOFFMAN, ALLWEISS & HAULER, L.L.P.
701 Poydras Street, Suite 3600
New Orleans, LA 70139

        COUNSEL FOR DEFENDANT/RELATOR

**WRIT GRANTED;
JUDGMENT REVERSED
AND RENDERED
MAY 04, 2022**

PAB
DLD
RML

Relator, Marcel A. Bacchus, M.D. ("Relator"), seeks supervisory review of the district court's February 6, 2022 judgment, which granted Respondent's, Yvonne Gueringer Bacchus ("Respondent"), motion requesting that the proceeds from the sale of immovable property be deposited into the registry of the district court. For the reasons that follow, we grant Relator's writ application and reverse the district court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Relator and Respondent married on June 21, 1975. On January 4, 1989, Relator and Respondent, in their individual names, purchased property located at 1520 North Broad Street, New Orleans, Louisiana ("Broad Street Property"). On June 17, 1997, the parties transferred their individual ownership of the Broad Street Property to a company they formed, known as The 1520 North Broad Street, LLC ("Broad Street, LLC"). Relator and Respondent are the only members/managers of Broad Street, LLC, which was organized for the sole purpose of shielding them from personal liability. Notably, the Broad Street Property housed Relator's medical practice.

1

After Relator and Respondent were judicially divorced on July 25, 2001, they mutually consented to a *Consent Judgment of Partition of Community Property and Spousal Support* (the "consent judgment").[1] The consent judgment stipulated that Relator and Respondent each received their own undivided one-half interest in the community property regime that formerly existed between them. Specifically, Relator received, among other things, the Broad Street Property, his entire medical practice and its subsequent proceeds after the termination date of the community property regime, any and all funds registered in his name, including life insurance policies, and he assumed full liability of several community debts. Respondent received, among other things, the former matrimonial domicile, jewelry in her possession, proceeds from an IRA, health insurance paid by Relator, and final spousal support for a period of five (5) years.

In addition, Relator consented to paying the mortgage, insurance, taxes and associated fees on the matrimonial domicile for a period of nine (9) months or until the matrimonial domicile was sold, whichever occurred first.[2] Relator and Respondent each waived their right for a more particular itemization of the quantifiable assets and any potential claims against each other concerning the separation of property or the marriage. The consent judgment bears the signatures of Relator, Respondent, each of their attorneys and the district court judge, and is dated December 21, 2001. Aside from the Broad Street Property being partitioned to Relator, Broad Street, LLC was not mentioned in the consent judgment.

---

[1] The community property regime terminated in October 2000.

[2] Shortly after the parties executed the consent judgment, Respondent listed the matrimonial domicile for sale.

Twenty (20) years later, Relator desired to retire from the practice of medicine and attempted to sell the Broad Street Property by entering a purchase agreement with a potential buyer on October 19, 2021.[3] However, a title examination of the Broad Street Property revealed that it was owned by Broad Street, LLC, and not Relator. On December 9, 2021, Relator filed, in the district court, an expedited rule to show cause concerning the sale of the Broad Street Property. Relator requested the district court issue an order authorizing him, individually, and Broad Street, LLC, to finalize the sale of the Broad Street Property. Respondent, in opposition, sought a judgment that classified Broad Street, LLC as a part of the community regime that owned the Broad Street Property, and that Broad Street, LLC be partitioned accordingly.

A hearing on Relator's motion was held February 2, 2022, wherein the district court heard testimony from both Relator and Respondent. On February 9, 2022, the district court rendered a judgment, which granted Relator's motion to sell the Broad Street Property, but, in turn, granted Respondent's motion that the proceeds from the sale be deposited into the registry of the district court, pending a hearing to determine disbursement of the proceeds.

This writ application followed.

### DISCUSSION

Relator contends that (1) the district court erred in failing to enforce and reform the consent judgment and (2) the district court erred in granting Respondent's request that the proceeds from the sale of the Broad Street Property be deposited into the registry of the district court. Specifically, Relator argues that

---

[3] The closing date of the sale was scheduled for December 15, 2021.

the district court erroneously ignored the consent judgment and the testimony regarding his and Respondent's mutual mistake for failing to partition Broad Street, LLC, thus depriving Relator of his full ownership interest in the Broad Street Property.

It is well settled that "[a] consent judgment is a bilateral contract between the parties and must be based on consent, an essential element of every contract." *Sigur v. Sigur*, 1994-1736, p. 4 (La. App. 4 Cir. 3/16/95), 652 So.2d 1046, 1048 (citing *Chaisson v. Chaisson*, 454 So.2d 890, 892 (La. App. 4th Cir. 1984) "'[T]hrough concessions made by one or more of them,' the parties enter into a [consent judgment] to 'settle a dispute or an uncertainty concerning an obligation.'" *Jones v. City of New Orleans*, 2020-0247, p. 5 (La. App. 4 Cir. 4/14/21), 315 So.3d 963, 966-67 (citing La. C.C. art. 3071). "[A consent judgment] has binding force from the voluntary acquiescence of the parties, not from the court's adjudication." *Gulledge v. Gulledge*, 32,561, p. 3 (La. App. 2 Cir. 8/18/99), 738 So.2d 1229, 1230 (citations omitted). "When reviewing and interpreting a consent judgment, this Court applies the basic principles of contract interpretation, which begins with the determination of the common intent of the parties in forming the contract." *Jones*, 2020-0247, p. 5, 315 So.3d at 967 (citing La. C.C. art. 2045). "The intent of the parties is to be determined by the words of the contract when those words are clear and explicit and lead to no absurd consequences." *Burrell v. UMC*, 2019-1095, p. 5 (La. App. 4 Cir. 6/10/20), 302 So.3d 93, 96 (citation omitted). "Each provision in the [consent judgment] is interpreted in light of the other provisions so that each is given the meaning suggested by the [consent judgment] as a whole." *Nungesser v. Nungesser*, 1995-2298, p. 4 (La. App. 1 Cir. 6/28/96) 694 So.2d 312, 314. "[A] consent judgment

that results from the mutual consent of the parties 'is and should be accorded sanctity under the law.'" *Jones*, 2020-0247, p. 5, 315 So.3d at 967 (quoting *Plaquemines Parish Gov't v. Getty Oil Co.*, 1995-2452, p. 6 (La. 5/21/96), 673 So.2d 1002, 1006).

Respondent, in response to Relator, argues that she never intended to give away the majority of her community interest without an itemization, accounting or full understanding of the financial consequences of the consent judgment. Respondent relies on *Bernardi v. Bernardi*, 417 So.2d 382 (La. App. 4th Cir. 1982) for the proposition that she is entitled to a supplemental partition.

In *Bernardi,* the plaintiff/wife and defendant/husband acquired several interests in corporations during the marriage. After their separation, they entered a separation of community property agreement. In that agreement, partition of the interests in the corporations was not considered. Accordingly, the defendant issued a promissory note via a supplemental partition of community property. As the defendant, thereafter, did not follow through with his obligations, the plaintiff filed suit in the district court seeking to enforce the promissory note. The district court found that the promissory note and supplemental agreement were valid and enforceable. The defendant appealed. On appeal, this Court affirmed the district court and set forth that although the parties intended for their separation of assets to be final and complete, "it became necessary to enter into a second community property agreement to dispose of interests . . . not considered in the initial agreement." *Id.* at 383. This Court further found that "there [was] nothing in the law or jurisprudence which would prohibit [the] parties from entering into [a] supplemental agreement" of separation of community property. *Id.* This Court

5

explained that "[a] supplemental agreement is only a part of the final and equitable disposition of the community properties, and relates to the entire transaction." *Id*.

We find the case *sub judice* is distinguishable from *Bernardi*, as the *Bernardi* supplemental partition was to dispose of interests not considered in the initial community property agreement. In the present case, Relator and Respondent are in a dispute over Broad Street, LLC, which owns the Broad Street Property – property that the parties, by way of the consent judgment, partitioned to Relator over twenty (20) years ago. Although the consent judgment stipulated that Relator receive the Broad Street Property and the entire community interest in the medical practice, Relator submits that it was a mutual mistake for failing to partition Broad Street, LLC. The First Circuit addressed a similar issue in *Nungesser v. Nungesser*, 1995-2298 (La. App. 1 Cir. 6/28/96), 694 So.2d 312.

In *Nungesser*, the plaintiff/husband and defendant/wife, following their divorce, entered into a consent judgment. The consent judgment transferred 2.25 acres of immovable property referenced by a full property description to the husband, which was where the matrimonial domicile was situated. Adjacent to that property was also a one-acre lot purchased during the marriage that was inadvertently left out of the full property description. Three (3) years following the consent judgment, the husband attempted to sell the one-acre lot, as he believed it was transferred to him. The husband requested the wife reform the property description to reflect the one-acre lot, but she refused. Consequently, the husband filed suit in the district court and sought ownership of the one-acre lot. In her answer, the wife argued that the lot was never disposed of in the consent judgment and, therefore, it was co-owned by her and the husband. The district court ruled in favor of the wife and ordered the proceeds from the sale be deposited into the

registry of court, pending determination of ownership of the one-acre lot. The husband appealed.

On appeal, the *Nungesser* Court found that the consent judgment was a "*complete* and *final* partition of *all* the community property."[4] *Id.* at p. 5, 694 So.2d at 314. Specifically, the *Nungesser* Court explained that the inadvertent omission of the one-acre lot rendered the property description ambiguous, and that when ambiguity exists, the "courts should view the [consent judgment] as a whole." *Id.* As such, the *Nungesser* Court found the consent judgment, taken as a whole, revealed the true intent of the parties. The *Nungesser* Court acknowledged that a consent judgment can be amended by a supplemental partition when community property has been inadvertently omitted. *Id.* at p. 6, 694 So.2d at 315 (citing *Rollison v. Rollison*, 541 So.2d 375 (La. App. 2nd Cir. 1989). However, testimony revealed that the parties "were fully aware of the existence of [the one-acre lot], and indeed, it was the subject of negotiations leading up to the final document, which was agreed to and signed by the parties." *Id.* Accordingly, the *Nungesser* Court held that "despite the absence of the property description for [the one-acre lot] in the attached exhibit, the consent judgment clearly confers the lot, as a portion of the immovable property comprising the family homestead, to Mr. Nungesser." *Id.*

In the case *sub judice*, the record reflects that the parties intended for Relator to receive Broad Street, LLC. First, following the execution of the consent judgment, Relator continued his medical practice at the Broad Street Property for

---

[4] The *Nungesser* consent judgment specifically provided that "*all* of the assets of their community of acquets and gains *are fully set forth herein;* and *. . . there are no other understandings and agreements between them* except as set forth herein." *Id.* at p. 5, 694 So.2d at 314.

twenty (20) years, made all of its mortgage payments and enjoyed its exclusive use. Second, the testimony elicited at the hearing reveals that both Relator and Respondent were aware of the existence of Broad Street, LLC, albeit they either "forgot" or "didn't think of it" and include it in the consent judgment. Third, although Broad Street, LLC was not referenced, the consent judgment clearly confers Broad Street, LLC to Relator, as Broad Street, LLC is comprised of the Broad Street Property.[5] Relator and Respondent, as co-owners of Broad Street, LLC, signed the consent judgment transferring the interests of the Broad Street Property to Relator. Finally, the consent judgment provides, in pertinent part:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that **each party is fully satisfied** with their opportunity to discovery all of the community assets and liabilities.

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that except as provided herein, **these parties have no further claims against each other** concerning their community property, separate property, or any claims concerning or arising out of their marriage, all of which such claims be, and the same are hereby, dismissed, with prejudice, as of the date of this compromise, and the parties knowingly waive a more particular itemization of any and all such claims.

> *         *         *

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that **both parties are satisfied that this partition is fair and equitable**, and they both desire that it be homologated herein as being fair and equitable, and it is thus hereby homologated as being fair and equitable to each party.

(emphasis added). Accordingly, the consent judgment, taken as a whole, reveals that the intent of the parties was for Relator to receive the Broad Street Property

---

[5] Relator attached as an exhibit to his writ application Broad Street, LLC's articles of organization. Article II provides that "[t]he purpose of the [Broad Street, LLC] shall be to own and lease the building and other improvements located at [the Broad Street Property]."

*and* Broad Street, LLC as his full ownership interest in the partition of community property regime.

## CONCLUSION

Based on the foregoing, we grant Relator's writ application and reverse the district court's judgment placing the proceeds of the sale of the Broad Street Property in the court of registry. Relator is entitled to all proceeds from the sale of the Broad Street Property.

**WRIT GRANTED;**
**JUDGMENT REVERSED**
**AND RENDERED**