ROBERT A. CHAISSON, Judge.
| gPlaintiff/Appellant, Cynthia Scarengos Rousset, appeals from the district court’s interpretation of a consent judgment concerning the sale of the community home. In addition, Ms. Rousset appeals the district court’s finding that she was in- contempt of court for failing to produce five keys for collectible vending machines and the court’s subsequent imposition of sanctions in the amount of $250.00 per key. For the reasons that follow, we affirm in part, reverse in part, and remand to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY

Cynthia Scarengos Rousset (“Ms. Rous-set”) and Jeffrey Maurice Rousset (“Mr. Rousset”) were married on October 18, 1986, and three children were born of this union. On March 17, 2009, Ms. Rousset filed a petition for divorce pursuant to LSA-C.C. art. 102 based on living separate and apart for the requisite amount of time. In the petition Ms. Rousset requested that she be awarded use and occupancy of the family home located on Hudson Street in Kenner and also |srequested the partition of the community property. Various issues ancillary to the divorce, including custody, child support, and community property, came for hearing on August 11, 2009, before a hearing officer. As a result of issues discussed at this hearing, the parties, on August 26, 2009, signed a consent *255 judgment. Pertinent to this appeal is the following language:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that CYNTHIA SCARENGOS ROUSSET shall be granted interim use and occupancy of the family residence located at 1410 Hudson Street, Kenner, Louisiana 70062. Rental reimbursement is waived by JEFFREY MAURICE ROUSSET. CYNTHIA SCARENGOS ROUSSET shall make the mortgage payments on the family residence and waives reimbursement claim for said mortgage payments. JEFFREY MAURICE ROUS-SET agrees to sell his interest in the family residence located at 1410 Hudson Street, Kenner, Louisiana, 70062 to CYNTHIA SCARENGOS ROUSSET for the appraised value of $196,000 upon finalization of the community property partition.
Thereafter, on July 1, 2010, the court signed a judgment granting the parties a divorce. As part of the ongoing litigation over community property issues, Mr. Rousset filed a rule for contempt on February 23, 2012, in which he requested that Ms. Rousset be required to produce all keys to the collectible vending machines that he received. After a hearing on March 9, 2012, the trial judge found that if Mr. Rousset did not get all of the keys for the items of which he is in possession, then Ms. Rousset would be sanctioned in the amount of $250.00 for each key that was not returned.
On January 21, 2014, Mr. Rousset filed a document entitled “Rules.” In the rule, he alleged that Ms. Rousset had not provided him with keys to seventeen antique vending machines as directed by the court, and therefore, he requested that she be found in contempt and ordered to pay him $250.00 per key. In the rule, he also raised an issue regarding the “purchase of family home per judgment and elimination of reimbursement claims requested by Cynthia' S. Rousset in connection with the immovable property.” In this claim, Mr. Rousset basically | ¿sought to enforce the previously cited provision in the consent judgment regarding the sale of the family residence for $196,000.00.
A hearing was conducted on these issues on April 8, 2014. After considering the evidence presented, the court found that Ms. Rousset failed to return five of the keys and ordered her to pay sanctions in the amount of $250.00 per key. Regarding the sale of the family residence on Hudson, the court found that the consent judgment was an enforceable agreement and that “there was a give-and-take agreement to sell and purchase the house at the stated worth.” It is from this judgment that Ms. Rousset now appeals. She raises two issues: 1) the trial court was manifestly erroneous in finding a contract existed wherein Mr. Rousset agreed to sell immovable community property and Ms. Rousset agreed to purchase immovable property; and 2) the trial court abused its discretion and was manifestly erroneous in finding Ms. Rousset in contempt for failing to produce five keys to the collectible vending machines and in thereafter imposing excessive sanctions of $250.00 per key, in addition to attorneys’ fees and court costs.

LAW AND ANALYSIS

In her first assigned error, Ms. Rousset contends that the trial court was manifestly erroneous in finding that the provision of the consent judgment relating to the sale of the family residence was an enforceable agreement between the parties to buy and sell the property. Ms. Rousset acknowledges that Mr. Rousset agreed to sell the property for $196,000.00; however, she maintains that she never agreed to buy it. We find no merit to this argument.
*256 A consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. LSA-C.C. art. 3071. As such, |fiit should be governed by the same rules of construction that apply to contracts. Nelson v. Nelson, 08-85 (La.App. 5 Cir. 6/19/08), 985 So.2d 1285, 1290.
A compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. The interpretation of the consent judgment is the determination of the common intent of the parties. LSA-C.C. art. 2045; Nungesser v. Nungesser, 95-2298 (La.App. 1 Cir. 6/28/96), 694 So.2d 312, 314. The meaning and intent of the parties is ordinarily determined from the four comers of the instrument. Millet v. Millet, 04-406 (La.App. 5 Cir. 10/26/04), 888 So.2d 291, 293. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. LSA-C.C. art. 2046; Sutherlin v. Sutherlin, 05-535 (La.App. 5 Cir. 2/3/06), 930 So.2d 51, 53.
When the language of a contract is- ambiguous it is proper to go outside the four comers of the instrument and use extrinsic evidence to determine the parties’ intent. Nelson v. Nelson, 985 So.2d at 1290. LSA-C.C. art. 2053 provides that “a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties.”
In the present case, the parties entered into a consent judgment in August of 2009. It specifically provided that Mr. Rousset agreed to sell his interest in the family residence to Ms. Rousset for the appraised value of $196,000.00 upon finalization of the community property partition. At the hearing on the enforceability of this provision, both Mr. and Ms. Rousset testified about their intent when entering into the consent judgment.
|6Ms. Rousset testified that at the time of the entry of the consent judgment, they owned two pieces of property, a rental house on Iowa Street and the family residence on Hudson Street. According to Ms. Rousset, Mr. Rousset agreed to sell the rental property to her aunt and grandmother, and he also agreed to sell the house on Hudson Street. Ms. Rousset maintained, however, that she never agreed to buy; rather, Mr. Rousset just agreed to sell it. In contrast, Mr. Rousset testified that in exchange for agreeing to sell the rental house to her relatives, she agreed to buy him out of the family residence for $196,000.00.
The trial court, after considering the consent judgment in its entirety, as well as the evidence presented at the hearing, found that the consent judgment was an enforceable agreement between the parties and that “there was a give-and-take agreement to sell and purchase the house at the stated worth.” We find that the record supports the trial court’s ruling.
The consent judgment entered into between the parties was a comprehensive agreement covering custody of the minor children, child support, visitation, and other issues ancillary to the divorce. In the agreement, Ms. Rousset was given use and occupancy of the family home, and Mr. Rousset waived rental reimbursement. In addition, Ms. Rousset agreed to make the mortgage payments and waive reimburse *257 ment for the same. In the same paragraph with these provisions, Mr. Rousset agreed to sell the Hudson Street residence to Ms. Rousset for $196,000.00. Although the paragraph does not specifically state that she agreed to buy the property, her intent to purchase is evident from the fact that shortly before the consent judgment, Ms. Rousset had obtained an appraisal on the property which came back at a value of $196,000.00, the amount' reflected in the consent judgment. Further, Ms. Rousset testified that as of the date of the hearing, she did not want to buy the house for $196,000.00 because it was no longer worth that 17amount. Moreover, the trial court’s ruling is supported by Mr. Rousset’s testimony that even though he could have lived in the rental house, he agreed to the sale of the property in exchange for her agreement to purchase the family home at the appraised value of $196,000.00. The sale of the rental property occurred shortly after the consent judgment was entered into between the parties. Accordingly, we find that the trial court was not manifestly erroneous in finding this provision of the consent judgment to be an enforceable agreement between the parties to buy and sell the Hudson Street residence.
In her second assigned error, Ms. Rousset argues that the trial court abused its discretion and was manifestly erroneous in finding her in contempt and in thereafter imposing excessive sanctions. She contends that her actions in not providing the keys were not sanctionable. Ms. Rousset specifically points out that she tried to return the keys or replace the locks, but Mr. Rousset never responded to her inquiries regarding which keys were missing. She further contends that the sanctions imposed pursuant to the court’s finding of contempt were excessive.
 LSA-C.C.P. art. 224(2) provides that “wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court” constitutes constructive contempt of court. To find a person guilty of constructive contempt, the trial court must find that he or she violated the order of the court intentionally, knowingly, and purposely, without justifiable excuse. Short v. Short, 12-312 (La.App. 5 Cir. 11/13/12), 105 So.3d 892, 896. The party seeking contempt must show that the alleged offender willfully disobeyed an order of the court prior to the contempt rule. Fleming v. Armant, 12-43 (La.App. 5 Cir. 5/31/12), 97 So.3d 1071, 1075.
Mr. Rousset originally filed á rule for contempt on February 23, 2012, requesting that Ms. Rousset be required to produce all keys to the collectibles he received. After a hearing, the trial court ordered that Ms. Rousset would be subject |Rto a sanction of $250.00 per key for each key that was not returned. On January 21, 2014, Mr. Rousset filed a rule alleging that Ms. Rousset had not provided him with keys to seventeen collectible vending machines as directed by the court, and therefore, he requested that she be found in contempt and ordered to pay $250.00 per key.
At the hearing on the rule for contempt, Mr. Rousset testified that at the time he left the house, all of the collectible machines had operable keys and locks. Mr. Rousset testified that he did not receive keys to eighteen machines that were in his possession. He asserted that each machine had a key that was labelled and kept on hooks in cabinets. According to Mr. Rousset, he was supposed to get the cabinets with the keys as part of the community property settlement; however, when he got the cabinets back, the hooks and keys had been removed. He admitted that Ms. Rousset had given him over fifty keys but maintained they were not for the machines in his possession.
*258 Ms. Rousset testified that all of the machines did not have keys and that she provided him with the keys that she found in the house. In connection with the court order, she has given him at least fifty keys. She claimed that after she gave him the last set of keys in September of 2012, he did not respond to her e-mails about the keys fitting. She testified that she has made every effort to supply him with the missing keys and that she even authorized her attorney to make an offer to Mr. Rous-set that she would replace the locks on the machines; however, he never responded to her requests.
After considering the evidence presented at the hearing, the trial court found that Ms. Rousset had not provided five keys to Mr. Rousset and imposed sanctions in the amount of $250.00 per key. We find this determination to be manifestly erroneous.
|flIn the present case, Mr. Rousset filed the rule for contempt against Ms. Rousset, and therefore, it was his burden to prove that she willfully disobeyed a court order. We find that he failed in this burden. The record is clear that after Mr. Rousset’s filing of the rule for contempt on February 23, 2012, and the subsequent March 9, 2012 hearing, Ms. Rousset made numerous attempts to provide Mr. Rousset with keys. This is evidenced by the testimony of Mr. and Ms. Rousset as well as the emails introduced by Ms. Rousset into evidence at the April 8, 2014 hearing.
On March 13, 2012, Ms. Rousset sent Mr. Rousset an e-mail asking him to please let her know if he was still missing any keys and whether the keys she had given him were the right ones. Receiving no response, Ms. Rousset sent Mr. Rous-set another e-mail on March 19, 2012. Thereafter, on March 20, 2012, Mr. Rous-set sent Ms. Rousset an e-mail advising her that he did not have keys for the “red vendo 39, red & white vendo 39, canteen candy machine, see burg wall box, and the pistachio machine.” He also advised her that the two keys she had sent him were not for any of these machines. Once again, on March 22 and March 27, 2012, Ms. Rousset sent Mr. Rousset another email about the keys to the vending machines. Thereafter, on March 29, 2012, Mr. Rousset responded to her inquiry about the keys, and on April 2, 2012, he sent her another e-mail advising her that the keys she provided were not the ones he needed. Ms. Rousset responded on April 3, 2012, advising him that she “will check around'again for any others.” On April 16, 2012, Ms. Rousset sent another email to Mr. Rousset advising him that one of the children had just reminded her that there were some keys in the cup in the cabinet with the phone books and that she would check them when she got home. Mr." Rousset responded to her e-mail advising her of the shape of the keys he needed. On April 17, 2012, Ms. Rousset advised him that she had found some |inodd shaped .keys that might fit and that she would also look through some junk drawers to see if there were any other keys. Although no subsequent e-mails between the parties about the keys were introduced at the hearing, Ms. Rousset testified that on several other occasions, she provided Mr. Rousset with keys to see if they fit the machines; however, she never received responses as to whether they were the right keys. In addition, Ms. Rousset’s attorney sent Mr. Rousset’s attorney a letter dated August 7, 2012, which was introduced at the hearing, indicating that Ms. Rousset had turned over several keys to him.
While it may be true that Mr. Rousset does not have the keys to all of the machines in his possession, the evidence is clear that Ms. Rousset made numerous *259 attempts to comply with the court order to provide Mr. Rousset with the kéys. In fact, Mr. Rousset acknowledged at the April 8, 2014 hearing that Ms. Rousset had provided him with “may be fifty (50) keys,” and he further recalled that she had contacted him via e-mail to find out if there were any missing keys. Given these circumstances, we find that the trial court was manifestly erroneous in finding that Ms. Rousset’s actions constituted a willful disobedience of a court order. Accordingly, we reverse the portion of the trial court judgment that found Ms. Rousset in contempt of court for failure to provide five keys and vacate the sanctions of $250.00 per key that were imposed. We remand the matter with instructions to the trial court to give Ms. Rousset an additional sixty days to produce the five keys or replace the locks to those machines. Since we are reversing a portion of the trial court judgment, we likewise reduce the amount of attorneys’ fees assessed against Ms. Rousset to $750.00, half of what was ordered by the trial court.

h,CONCLUSION

For the reasons set forth herein, we affirm the portion of the trial court judgment that found the provision of the consent judgment to be an enforceable agreement to buy and sell the immovable property between the parties; however, we reverse her finding of contempt and the imposition of sanctions in the amount of $250.00 per key and also reduce the amount of attorneys’ fees assessed against Ms. Rousset. We remand the matter for further proceedings in accordance with this opinion.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED