# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-82


**6TH WARD/CROWLEY GRAVITY DRAINAGE DISTRICT, ET AL.**

**VERSUS**

**CHARLES BENOIT**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 2008-11027
HONORABLE PATRICK MICHOT, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.


**AFFIRMED.**


**Thomas K. Regan**
**Privat & Regan**
**Post Office Box 688**
**Crowley, LA 70527-0688**
**(337) 783-7141**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **City of Crowley**

**F. Douglas Wimberly**
**Cloyd, Wimberly & Villemarette, L.L.C.**
**Post Office Box 53951**
**Lafayette, LA 70505-3951**
**(337) 289-6906**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **6th Ward Crowley Gravity Drainage District**

**Brad P. Scott**
**Christopher A. Meeks**
**David P. Vicknair**
**Scott, Vicknair, Hair & Checki**
**909 Poydras Street, Suite 1100**
**New Orleans, LA   70112**
**(504) 684-5200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Charles Benoit**

**AMY, Judge.**

The plaintiffs filed a motion for contempt of court, asserting that the defendant failed to comply with various terms included in a 2012 Consent Judgment, whereby the defendant was ordered to, among other things, remove debris from a drainage channel. Following a hearing, the trial court entered a judgment of contempt, sentencing the defendant to thirty days in the parish jail and making that sentence contingent on the timely completion of designated tasks.

## Factual and Procedural Background

The present contempt of court proceeding originates from a 2008 petition filed by the 6th Ward/Crowley Gravity Drainage District (the "District") against Charles Benoit, alleging that Mr. Benoit had placed "large amounts of debris, including concrete and asphalt on [his] property abutting Bayou Blanc[.]" The District cited concerns regarding potential drainage and integrity of the drainage canal as well as erosion and possible contamination of the soil by hydrocarbons. The District alleged that Mr. Benoit's actions "caused significant damages to the banks and shoulders of the drainage channel, particularly fracturing the soil and causing the collapse of the northern bank of Bayou Blanc, depositing materials into the right-of-way and existing drainage channel[.]" The District asked that Mr. Benoit be held "liable for, including but not limited to the cost of removing all material, construction debris and soil which shifted into the drainage channel, and the cost of restoration of the drainage channel and the cost of the restoration of the northern and southern banks of the drainage channel in order to prevent further erosion."

While the matter proceeded to trial on January 31, 2012, and February 1-2, 2012, the record indicates that, at the close of the District's evidence, "the parties stipulated subject to the approval of the members of the governing authorities that the Court would issue a Consent Judgment[.]" The resulting Consent Judgment, signed by the trial court on March 12, 2012, provides, in part, that:

1.

CHARLES BENOIT shall remove a maximum of 3,000 cubic yards by truck measure of construction debris, concrete and other material along and adjacent to the property belonging to **CHARLES BENOIT** from the north bank and the channel of Bayou Blanc, at his cost up to a maximum of $90,000.00, including excavation, removal and disposal. If stabilization of the north bank is achieved with removal of less than 3,000 cubic yards of debris and material (as to quantity and slope) as determined by the **6th WARD** consulting engineers, removal will cease. If after removal of 3,000 cubic yards of debris and material, stabilization has not been achieved, the **6th WARD DRAINAGE DISTRICT** will be responsible for removal of sufficient additional material to achieve bank stabilization.

2.

CHARLES BENOIT shall grade, reshape and slope the bank to achieve a slope no steeper than a 4:1 ratio but may be steeper if approved by the **6th WARD DRAINAGE DISTRICT** engineer at the sole expense of **CHARLES BENOIT** including all measures for the stabilization of the remaining portion of the building nearest Highway 13 and erosion protection. Any damage or loss of the building shall be at the sole risk and responsibility of **CHARLES BENOIT**.

3.

CHARLES BENOIT shall remove the unstable portion of the building nearest Highway 13 approximately the southernmost twenty (20) feet of the building and shall remove all other structures, including but not limited to movable trailers, campers, manufactured housing, buildings and the large storage structure at Avenue M, south of the existing private road. The existing private road may remain in place except as provided below.

4.

CHARLES BENOIT shall begin removal of the debris from the channel and north bank within sixty (60) days of the signing of the Consent Judgment.

5.

CHARLES BENOIT shall grant a permanent servitude in favor of the **6th WARD DRAINAGE DISTRICT** over and across the property along Bayou Blanc south of his existing private road to the low bank. However, if a portion of the private road is within the area necessary for the servitude and to be determined by the sloped (a 4:1 ratio), a steeper sloped ratio shall be approved by the consulting engineers, provided **CHARLES BENOIT** pays all the costs to maintain the private road with a steeper slope ratio. No material whatsoever or any improvements, buildings or structures, including slope protection revetment or retaining walls shall be placed or constructed south of the existing road or 4:1 slope area at any time without the prior written approval of the **6th WARD DRAINAGE DISTRICT.**

6.

All work, including excavation, removal and disposal of debris, sloping, grading and leveling, shall be completed by **CHARLES BENOIT** within one year of the date of signing of the Judgment and no debris or material removed from the bank shall remain on the property except for material which is approved for fill or erosion control material and is leveled to grade.

7.

All work performed shall be subject to the approval and as directed by the **6th WARD DRAINAGE DISTRICT**'s consulting engineers.

The record indicates that, following the 2012 judgment, the District repeatedly returned to court seeking Mr. Benoit's compliance. The District first filed motion for contempt of court in May 2013 and alleged that Mr. Benoit had taken no action in compliance with the Consent Judgment. Following a hearing, the trial court rendered an August 5, 2013 constructive contempt judgment, sentencing Mr. Benoit to "thirty (30) days in the Parish jail[.]" However, the trial court ordered that the sentence be suspended if Mr. Benoit made "significant progress in complying with the requirements of the Consent Judgment" within sixty days and if he completed "the cleanup process" detailed in the Consent Judgment within one year of the contempt judgment.

However, the District returned to the trial court with the filing of a second Motion for Contempt of Court in January 2014, alleging that Mr. Benoit had "taken no action whatsoever in complying with either the Consent Judgment dated March 14, 2012, or the Judgment On Rule dated August 5, 2013." The District noted that "[m]ore than sixty (60) days ha[d] transpired since" the trial court's order to "'make significant progress in complying with the Consent Judgment.'" On July 15, 2014, the trial court issued an Order finding it to be "in the best interest of the parties to defer sentencing to allow the Defendant/Respondent to complete the work in accordance with the Consent Judgment" pursuant to a stipulation reached between the parties. The trial court rescheduled the hearing on the Motion for Contempt and Motion to Enforce Consent Judgment until August 18, 2014. Following a hearing on

3

that deferred date, the trial court again found Mr. Benoit in contempt by judgment signed on October 15, 2014. The trial court sentenced the defendant to "thirty (30) days in the Parish Jail," which the trial court again "suspended conditioned upon compliance" with a further stipulated Order.[1]

In February 2015, the trial court considered another Motion for Contempt and to Enforce Judgment,[2] and, by March 2015 judgment, found Mr. Benoit in contempt. The trial court sentenced Mr. Benoit to serve "a term of thirty (30) days in the Parish Jail, which sentence shall be suspended conditioned upon compliance with the following stipulated Order[.]" The judgment instructed Mr. Benoit "to have a contractor mobilized on the property to begin excavation work, within sixty (60) days from February 18, 2015[,]" and to "provide written notice to plaintiffs' counsel, three (3) days prior to the mobilization date, so that the engineers [could] stake out the area of excavation[.]" The judgment further ordered that Mr. Benoit's "contractor shall meet with the engineers prior to any excavation begin[ning.]"

However, the present matter was instituted when, in January 2016, the District again filed a Motion for Contempt, seeking a finding of constructive contempt due to Mr. Benoit's alleged "failure to comply with terms of the Judgment signed by this Honorable Court on March 4, 2015[.]" The District contended that, although Mr. Benoit had served jail time following the prior finding of contempt, he had "taken no

---

[1] In this regard, the October 15, 2014 judgment ordered Mr. Benoit to:

> [R]emove the remaining trailer/mobile homes south of the private road and demolish the warehouse building on east side of the property and the southernmost portion of the warehouse building on the west side of the property (being approximately 20 to 25 feet thereof) within thirty (30) days from August 18, 2014, weather permitting, and any claim for rain delays shall be substantiated by a written log or other document evidencing same; and
>
> **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that once the trailer/mobile homes have been removed and the buildings demolished, the engineers shall on or about October 1st or as soon thereafter as the tract has been cleared enter the site and commence surveying to calculate the proper slope and the locations and amount of the debris to be removed[.]

[2] The Motion for Contempt and Enforce Judgment referenced in the trial court's judgment is not contained within the present record. We include discussion of the resulting judgment for background purposes.

action [in] furtherance of any of the obligations he agreed to perform, as documented in the Consent Judgment of March 14, 2012."

Following a hearing, the trial court denied the Motion for Contempt, but ordered the parties to "meet and confer so as to agree upon a procedure to implement the Consent Judgment by setting a date to establish a time to begin the excavation work as stipulated in the Consent Judgment signed on March 12[sic], 2012[.]" The record indicates that the trial court thereafter issued an April 4, 2016 Order detailing a timeline for the "re-staking" of the subject excavation site, as well as the District's providing details regarding the necessary depth of the excavation.

The Order further provided instructions regarding the timeline for the mobilization of necessary equipment and the need "to maintain the integrity and placement of the survey stakes placed by defendants on the property, until actual excavation begins." It also included reference to the need for the District's supervisor to be on site at the time of the excavation "in order to verify, by truckload measurement, the amount of debris/fill removed from the 'staked out' area." Further, the Order provided that "[t]he excavation of the required amount of debris/fill, and/or achievement of the slope required by the Consent Judgment of March 14, 2012[,] will be accomplished on or before April 25, 2016." Finally, it directed that the building that was to be "partially removed and/or demolished as per the Consent Judgment of March 14, 2012[,]" was to "be removed by 4/25/16."

The record contains a subsequent Order, which followed a "Status Conference in Open Court" on April 25, 2016. Therein, the trial court ordered "that all trucks and equipment (including the excavator) shall not be removed from the site until all of the work is completed unless it interferes with the job progress." The Order further instructed that "the building must be cleared and removed not later than this week[.]" It advised that "upon failure to do so," another hearing would be scheduled on contempt charges or a status conference would be held.

However, on June 6, 2016, the District filed the Motion for Contempt of Court resulting in the judgment now under review. Therein, the District alleged that its engineer met with Mr. Benoit and his contractor, reminding them "that the material excavated from the slope was to be loaded onto trucks so that a 'truck' measurement[3] of the volume of material removed could be determined." It explained that, although, by "May 23, 2016, a quantity of material had been excavated from the slope and placed on the top bank immediately above the beginning of the slope[,]" "[n]o truck measurement of the excavated material was accomplished." Further, the District alleged that the excavation performed "did not begin at the toe of the slope as required by the engineering analysis, in order to achieve a stable slope." Neither, the District asserted, had Mr. Benoit "removed the unstable portion of the building located near the Hwy 13 Bridge, as required by the Consent Judgment and the Order of April 4, 2016." The District explained that it had corresponded with counsel for Mr. Benoit, requesting "a plan of action" to bring the work into compliance, but that "[a]s of May 31, 2016[,] no further work had been done on the site, and all of the contractor's equipment had been removed." Given its allegation that Mr. Benoit failed to comply with prior orders of the court in various regards, it again advanced its request for a finding that Mr. Benoit was in contempt of court.

When the trial court conducted the contempt hearing in August 2016, the District presented testimony from its supervisor and its engineer, who each testified regarding excavated material that had been piled atop the adjacent bank, but that had not been removed from the property, as well as photographic evidence of the site's condition. While Mr. Benoit suggested that he had incurred costs at an amount that was sufficient to have satisfied his obligation under the Consent Judgment, the trial court limited his argument in this regard insofar as the figures were largely invoiced to

_____

[3] As quoted above, the Consent Judgment ordered Mr. Benoit to "remove a maximum of 3,000 cubic yards *by truck measure* of construction debris, concrete and other material[.]" (Emphasis added.)

him, but remained unpaid. The trial court allowed Mr. Benoit to proffer those invoices.

After argument from counsel regarding further plans to pursue completion of the necessary work, the trial court again entered a judgment of contempt, stating that it found Mr. Benoit "in contempt of Court for failing to comply with the provisions of the previous Consent Judgment . . . dated March 14, 2012," in that Mr. Benoit:

> a. Failed to remove the unstable portion of the building located near LA Hwy 13;
>
> b. Failed to load the excavated material into trucks for the purpose of quantifying the amount of material excavated;
>
> c. Placed excavated material south of the limestone road in [sic];[4] and
>
> d. Failed to make a good faith effort to comply with the provisions of the Consent Judgment and previous orders of this court[.]

The trial court sentenced Mr. Benoit to thirty days in the Parish jail. However, the trial court suspended execution of the sentence contingent upon Mr. Benoit's "accomplishing" of the following within sixty days:

> a. Removal of the unstable portion of the building nearest Highway 13, estimated to be the southernmost twenty (20) feet of the building; and
>
> b. Removal of all the excavated material; from south of the limestone road.

The judgment of contempt further included an Order that "any removal of excavated material will be quantified by truck measurement, verified by a representative of the [District]" and that Mr. Benoit was to, within ninety days, "comply with the provisions of the Consent Judgment dated March 14, 2012, regarding the required excavation of material at the 'toe' of the northern bank, removal of debris from the channel, and achieve the required slope."

---

[4] In his brief to this court, Mr. Benoit makes no argument regarding this particular finding of fact, which relates to the Consent Judgment's directive that: "No material whatsoever or any improvements, buildings or structures, including slope protection revetment or retaining walls shall be placed or constructed south of the existing road or 4:1 slope area at any time without the prior written approval of the [District]."

Mr. Benoit thereafter appealed, and, before this court, asserts that the trial court erred in: 1) barring "the introduction of all evidence offered to show" that he "satisfied his $90,000 obligation;" 2) determining that costs he "obligated himself to pay for the work do not count for purposes of the $90,000 until he actually pays the specified amount[;]" and in 3) finding him in contempt "for failing to remove the unstable portion of a building on his property when the City and the District failed to offer any evidence of which portion of the building is unstable."

**Discussion**

Mr. Benoit jointly addresses his assignments of error in his brief to this court, asserting that the trial court erred in discounting his contention that he satisfied the terms of the Consent Judgment insofar as he indebted himself in excess of $90,000 in his efforts to excavate the subject work site. In this regard, he cites error in the trial court's exclusion of invoices issued by his contractor, although he acknowledges that those invoices largely remain unpaid. Mr. Benoit also contends that the trial court erred in finding him in contempt for failure to remove the unstable portion of a building on his property insofar as the District failed to prove that any portion of the building was unstable and that, contrarily, he testified that it was not.

As provided by La.Code Civ.P. art. 221, "[a] contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." Louisiana Code of Civil Procedure Article 224 lists various acts that constitute constructive contempt[5] of court. Pertinent to the present matter is La.Code Civ.P. art. 224(2), which describes the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court" as a constructive contempt of court. In this latter regard, the trial court

---

[5] Louisiana Code of Civil Procedure Article 224 defines constructive contempt of court as "any contempt other than a direct one[,]" whereas La.Code Civ.P. art. 222 defines direct contempt as "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service of which appears of record."

8

specifically determined that Mr. Benoit "[f]ailed to make a good faith effort to comply with the provisions of the Consent Judgment and previous orders of this court[.]"

This matter involves a finding of civil contempt, as it is one in which the trial court seeks to compel compliance with the underlying Consent Judgment. *See Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So.2d 1170. The burden of proof applicable to a proceeding for civil contempt of court is the preponderance of the evidence standard. *Paradise Rod & Gun Club, Inc. v. Roy O. Martin Lumber Co., Inc.*, 14-1184 (La.App. 3 Cir. 4/1/15), 160 So.3d 626.

While Mr. Benoit suggests that the *de novo* standard of review is applicable in this matter as it is one of contract interpretation, we find no merit in that assertion. Rather, within his argument that he had a different interpretation of the meaning of the terms of the Consent Judgment, Mr. Benoit admittedly disputes his consent to that judgment. Notably, however, "unless a consent judgment is an absolute nullity, it cannot be attacked collaterally[.]" *Altemus v. Boudreaux*, 15-725, p. 6 (La.App. 3 Cir. 12/23/15), 184 So.3d 142, 146, *writ denied*, 16-0157 (La. 3/24/16), 190 So.3d 1197. Instead, we find that the appropriate standard of review is that applicable to a trial court's determination as to whether an individual should be held in contempt for disobeying a court order, i.e., the abuse of discretion standard. *See Capital City Press, L.L.C. v. La. State Univ. Sys. Bd. of Supervisors*, 13-1803, 13-1804 (La.App. 1 Cir. 12/30/14), 168 So.3d 669. However, the trial court's "predicate factual determinations are reviewed under the manifest error standard." *Id.* at 674.

With regard to the proffered invoices, Mr. Benoit argues that although they remain unpaid, the incurred obligation signaled satisfaction of the Consent Judgment. However, reference to the trial court's exclusion of those receipts indicates not only the trial court's rejection of Mr. Benoit's contention that the work was performed "at his cost" per the Consent Judgment, but that the District further challenged those invoices as they, in part, reflected work performed outside of the parameters of the

9

Consent Judgment.[6]  On review, we leave the trial court's ruling undisturbed and note, as an aside, that the invoices themselves offer only vague descriptions of the work performed.  *See Medine v. Roniger*, 03-3436, p. 6 (La. 7/2/04), 879 So.2d 706, 711 (explaining that "a district court is afforded great discretion concerning the admission of evidence at trial, and its decision to admit or exclude evidence may not be reversed on appeal in the absence of an abuse of that discretion").

Furthermore, and notwithstanding Mr. Benoit's suggestion that his compliance with the Consent Judgment is indicated by the incurring of certain debt, reference to the Consent Judgment itself reveals a broader directive to Mr. Benoit as to the issue of the removal of debris. In this regard, the Consent Judgment ordered that:

> **CHARLES BENOIT** shall remove a maximum of 3,000 cubic yards by truck measure of construction debris, concrete and other material along and adjacent to the property belonging to **CHARLES BENOIT** from the north bank and the channel of Bayou Blanc, at his cost up to a maximum of $90,000.00, including excavation, removal and disposal.  If stabilization of the north bank is achieved with removal of less than 3,000 cubic yards of debris and material (as to quantity and slope) as determined by the **6th WARD** consulting engineers, removal will cease.  If after removal of 3,000 cubic yards of debris and material, stabilization has not been achieved, the **6th WARD DRAINAGE DISTRICT** will be responsible for removal of sufficient additional material to achieve bank stabilization.

Significantly, and in addition to the fact that the work performed by Mr. Benoit has not yet been "at his cost" as determined by the trial court—a fact not specifically addressed by the contempt ruling—the remainder of the order is quite detailed and dependent upon measurement.

For example, the Consent Judgment required that Mr. Benoit "remove a maximum of 3,000 cubic yards by truck measure" of designated debris.  Yet, the excavated debris was simply piled atop the adjacent bank without the assistance of trucks for either measurement or removal/disposal purposes.  Thus, as testified to by the City of Crowley's engineer, the measure of debris could not be assessed per "truck

---

[6] Mr. Benoit contended that the removal of certain mobile homes on the property must be included in the work to be performed under the Consent Judgment.

measure" as required by the Consent Judgment. Accordingly, the record supports the trial court's finding of contempt in that Mr. Benoit "[f]ailed to load the excavated material into trucks for the purpose of quantifying the amount of material excavated[.]"

Neither do we find merit in Mr. Benoit's contention that the trial court erred in finding him in contempt due to the determination that he "[f]ailed to remove the unstable portion of the building located near LA Hwy 13[.]" In this regard, Mr. Benoit suggests that "the City and the Drainage District failed to introduce any evidence of which portion of the building was unstable and whether that portion still remained on the property." He also notes that he testified that no portion of the building was unstable and that he felt that the building could stay.

Finding no merit in Mr. Benoit's argument in this regard, we note that the matter before the trial court was a motion for contempt rather than a challenge to the parameters of the Consent Judgment. In this regard, the Consent Judgment was specific as to the portion of the building to be removed in that Mr. Benoit was ordered to:

> [R]emove the unstable portion of the building nearest Highway 13 *approximately the southernmost twenty (20) feet of the building* and shall remove all other structures, including but not limited to movable trailers, campers, manufactured housing, buildings and the large storage structure at Avenue M, south of the existing private road.

(Emphasis added.) Thus, the District was not required to demonstrate which portion of the building was unstable at the time of the contempt hearing. Rather, the unstable portion of the building was designated at the time of the Consent Judgment.[7] In turn, to maintain its burden of proof on the motion for contempt, the District was only required to demonstrate willful disregard of the Consent Judgment's order as to the building. On this point, Michael Habetz, an employee of the District who maintained

---

[7] The Consent Judgment's physical description of the building is mirrored in the judgment of contempt's order that the sentence imposed be "suspended contingent upon [Mr. Benoit] accomplishing the following within sixty (60) days: a. Removal of the unstable portion of the building nearest Highway 13, estimated to be the southernmost twenty (20) feet of the building[.]"

records of the progress on the property, testified that no portion of the subject building had been removed at the time of the hearing. Accordingly, we find no manifest error in the trial court's determination that Mr. Benoit failed to comply with the Consent Judgment as to the removal of the building.

In addition to our finding as to the trial court's particular factual findings addressed above, and given the circumstances of the five years between the Consent Judgment and the contempt ruling, we find no abuse of discretion in the trial court's finding of contempt.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this proceeding are assigned the appellant, Charles Benoit.

**AFFIRMED.**