NOT DESIGNATED FOR PUBLICATION

# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-9

DELORES MCCARTHY MCENTYRE

VERSUS

MICHAEL AARON MCENTYRE

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CATAHOULA, NO. 27,494
HONORABLE JOHN C. REEVES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.

**AFFIRMED AS AMENDED.**

**Brandy McClure**
**Attorney at Law**
**Post Office Box 665**
**Jonesville, Louisiana  71343**
**(318) 339-7337**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Delores McCarthy McEntyre**

**Alissa Piazza Tassin**
**Attorney at Law**
**Post Office Box 429**
**Marksville, Louisiana  71351**
**(318) 253-6423**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Michael Aaron McEntyre**

**CONERY, Judge.**

The plaintiff, Delores McCarthy McEntyre, filed a rule for contempt and a rule to enforce consent judgment, claiming that her former husband, defendant Michael McEntyre, had failed to comply with two consent judgments signed by the parties in 2014. Both judgments required the defendant to pay the plaintiff a salary for two years. The plaintiff also sought to enforce a 2014 partial act of partition and community property settlement, requiring the defendant to execute a promissory note to the bank holding the mortgage on property the plaintiff received in the partition. The defendant reconvened and sought a contempt judgment against the plaintiff.

Following a hearing, the trial court entered a judgment of contempt against the defendant, and ordered him to pay the salary owed to the plaintiff with judicial interest, to execute the necessary promissory note to the bank, and assessed the defendant with all costs. The trial court denied the defendant's rule for contempt against the plaintiff and denied all attorney fees sought by both parties. For the following reasons we affirm in part and reverse in part the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Michael Aaron McEntyre (Mr. McEntyre) and Delores McCarthy McEntyre (Ms. McEntyre) were married on July 3, 1999. The parties separated on August 7, 2013, and were divorced by virtue of an original consent judgment dated June 18, 2014, which was signed by both parties and filed in open court. By the original consent judgment, Mr. McEntyre agreed to hire Ms. McEntyre "as an employee of McEntyre Consulting, Inc. at a salary of $5,000 per month[,]" as demanded in the petition for divorce, "until October of 2015, at which time employment shall

terminate without further action of the court." Ms. McEntyre was "ordered to self [-] terminate [her] employment should she sell the acreage on Sandy Lake Rd."[1]

On December 16, 2014, an amended consent judgment, also signed by both parties, was rendered in order "to amend the wording of the previous consent judgment." It provided in pertinent part, that Mr. McEntyre "shall" continue to employ Ms. McEntyre at a monthly salary of $5,000.00, as set forth in the couple's October 11, 2013 original petition for divorce until October of 2015, "at which time employment shall terminate without further action of this court." Ms. McEntyre was "ordered to a reduced employment salary of $ 2,500.00 should she sell acreage on Sandy Lake Rd[.]"

The amended consent judgment also provided, "The acreage on Sandy Lake Road is divided into three parcels … should [Ms. McEntyre] only be able to sell the acreage piecemeal, each sold parcel shall decrease her income in the amount of $1,000.00."[2] Ms. McEntyre testified at the hearing that both consent judgments referring to her employment with McEntyre Consulting, Inc. and the payment of $5,000.00 per month were suggested by Mr. McEntyre. She explained that they had nothing to do with her actual employment with the company but were related to the divorce and her spousal support.

In accordance with the original petition for divorce, beginning in October of 2013, Mr. McEntyre began consistently paying Ms. McEntyre a salary of

---

[1] The description of the property on Sandy Lake Road was attached as Exhibit 1 to the petition for divorce and described as "131 acres on Sandy Lake Rd. and all equipment located thereon."

[2] The act of partial partition and community property settlement executed on December 10, 2014 divided the 131 acres on the Sandy Lake Road into three separate parcels identified in the document as parcel numbers one, two and three.

$5,000.00 a month from McEntyre Consulting, Inc.[3] In January of 2015, shortly after agreeing to the amended consent judgment in mid-December of 2014, Mr. McEntyre contended that his business had fallen on hard times due to the decline in the oil and gas industry. As a result, Mr. McEntyre's "salary payments" to Ms. McEntyre were reduced to only seven payments totaling $10,000.00 for the next six months, beginning on January 24, and ending on June 30, 2015. All but one of the payments, a wire transfer on February 3, 2015 from McEntyre Consulting, Inc., came from Mr. McEntyre's personal bank account. Mr. McEntyre testified that he began to personally pay the $5,000.00 to Ms. McEntyre to help her pay her bills based on the agreement in the two consent judgments

In correspondence postmarked June 1, 2015, Mr. McEntyre informed Ms. McEntyre that due to the situation in the "oilfield" he would be sending money from his personal account. "There will be no consulting money until I go back to consulting." Mr. McEntyre indicated that he was heading to "Iowa on a construction job[,]" and would be "looking for consulting work in a wide range mainly overseas[.]" Mr. McEntyre further expressed his apologies for the inconvenience.

When additional payments were not forthcoming, on May 5, 2017, Ms. McEntyre filed a "Rule For Contempt And Rule To Enforce," (Rule) seeking "back salary payments" of $37,500.00 as ordered by the trial court in the consent judgment dated December 16, 2014. Based on Mr. McEntyre's failure to pay Ms. McEntyre as ordered by the court, Ms. McEntyre asked the trial court to hold him

---

[3] Ms. McEntyre testified at the hearing that Mr. McEntyre had been paying her a salary from McEntyre Consulting Inc. for many years prior to the payments beginning in October 2013, in connection with the divorce proceedings.

in contempt for "his willful disobedience of the orders of [the] court." Ms. McEntyre also sought attorney fees for bringing suit and all costs.

Ms. McEntyre also asked the trial court to enforce the "Partial Act of Partition and Community Property Settlement" (Partition), which was executed by both parties on December 10, 2014, and entered into the conveyance records on December 12, 2014. In the Partition, Mr. McEntyre agreed to "sign a promissory note in favor of Catahoula LaSalle Bank" (Bank) in the amount of $50,000.00. The Bank was the mortgage holder on a property owned by Ms. McEntyre. She had paid interest on the note due to Mr. McEntyre's failure to secure the mortgage with the required promissory note. Ms. McEntyre asked the court to order Mr. McEntyre to sign the promissory note and to reimburse the amount of interest paid by her on the note to the Bank.

On January 29, 2018, Mr. McEntyre filed an answer to Ms. McEntyre's Rule, claiming that Ms. McEntyre had sold some of the Sandy Lake Road property, which complicated the issue of contempt. Further, Mr. McEntyre claimed that he had executed the $50,000.00 promissory note and, even if he failed to do so, that was not a basis for holding him in contempt.

On May 24, 2018, the morning of the hearing, Mr. McEntyre filed, in open court, a "Rule for Contempt and Rule to Enforce for Court Costs & Attorney's Fees." Mr. McEntyre asked the court to hold Ms. McEntyre in contempt of court "when she stopped paying for credit card debt referenced in the June 18, 2018. *Consent Judgment*."

A hearing was held on May 24, 2018, on the competing Rules filed on behalf of Mr. and Ms. McEntyre. Both parties testified, followed by Cody Johnson, Ms. McEntyre's son. At the close of evidence, the trial court allowed the parties to

4

submit post-hearing memoranda. After receipt of the memoranda, the trial court issued its judgment on July 31, 2018.

The trial court found that the consent judgment dated, June 18, 2014, and the amended consent judgment, dated December 16, 2014, were voluntarily agreed to by the parties, ratified by the court, and therefore were proper consent judgments. The trial court found Mr. McEntyre had the ability to pay Ms. McEntyre's salary when he signed the consent judgments. Therefore, the trial court found him in contempt for failing to timely pay Ms. McEntyre the $37,500.00 payment within thirty days of judicial demand. The trial court awarded judicial interest from that date but denied attorney fees requested by Ms. McEntyre in her Rule.

The court specifically "recognized and ratified" the Partition dated December 10, 2014, "in all of its terms and particulars" and ordered Mr. McEntyre to "immediately pay the balance due on the promissory note in favor of the Catahoula LaSalle Bank in the amount of $50,000.00 (or in the alternative make such arrangements as are agreeable to [Ms. McEntyre] … and the … Bank." Mr. McEntyre was also ordered to reimburse Ms. McEntyre the payments made by her on the note to the Bank.

The trial court denied Mr. McEntyre's request for an order of contempt, finding that Ms. McEntyre "did not assume any credit card indebtedness in either the Consent Judgment dated June 18, 2014, the amended Consent Judgment dated December 16, 2014 or the Partial Act of Partition and Community Property Settlement dated December 10, 2014." The trial court also denied Mr. McEntyre's request for attorney fees and assessed him with all costs. Mr. McEntyre has filed a timely suspensive appeal from the trial court's July 31, 2018 judgment.

## ASSIGNMENTS OF ERROR

1) The trial court erred as a matter of law and fact by holding Michael McEntyre in contempt.

2) The trial court improperly ordered Michael McEntyre to pay a sum of $37,500 (within 30 days of ruling) in conjunction with the erroneous contempt ruling.

3) The trial court erroneously ordered legal interest.

4) The trial court improperly granted relief related to the signing of a promissory note; because it was never an order of the court, nor was the partial petition of community property properly homologated. That the court was erroneous in this same order for requiring that Michael McEntyre be responsible for and immediately pay the balance due on the promissory note in favor of Catahoula LaSalle Bank in the amount of $50,000.00 (or in the alternative make arrangements as are agreeable to Delores McEntyre and the Catahoula LaSalle Bank) and that Delores McEntyre be reimbursed by Michael McEntyre for any and all payments made by her towards said note.

5) The trial [c]ourt erred by casting all costs on Michael McEntyre considering all errors, assigned herein, and as such the casting of costs should be reversed and set side.

## LAW AND DISCUSSION

### *Standard of Review*

Review of the trial court's determination as to whether the behavior of an individual rises to the level of civil contempt is subject to the manifest error standard of review. *McCorvey v. McCorvey*, 05-1173 (La.App. 3 Cir. 4/5/06), 926 So.2d 114, *writ denied*, 06-959 (La. 6/16/06), 929 So.2d 1290.

### *Civil Contempt*

A panel of this court in *6th Ward/Crowley Gravity Drainage District v. Benoit*, 17-82, pp. 8-9 (La.App. 3 Cir. 10/4/17), 229 So.3d 590, 596, clearly provided the applicable law when there is a claim for civil contempt, explaining that:

6

As provided by La.Code Civ.P. art. 221, "[a] contempt of court is any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority." Louisiana Code of Civil Procedure Article 224 lists various acts that constitute constructive contempt[4] of court. Pertinent to the present matter is La.Code Civ.P. art. 224(2), which describes the "[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court" as a constructive contempt of court . . . .

This matter involves a finding of civil contempt, as it is one in which the trial court seeks to compel compliance with the underlying Consent Judgment. *See Billiot v. Billiot*, 01-1298 (La. 1/25/02), 805 So.2d 1170. The burden of proof applicable to a proceeding for civil contempt of court is a preponderance of the evidence standard. *Paradise Rod & Gun Club, Inc. v. Roy O. Martin Lumber Co., Inc.*, 14-1184 (La.App. 3 Cir. 4/1/15), 160 So.3d 626.

### *Consent Judgments*

A discussion of the law and jurisprudence interpreting a consent judgment is contained in *Rousset v. Rousset*, 14-663, pp. 4-5 (La.App. 5 Cir. 4/15/15), 170 So.3d 253, 256, an opinion of our sister circuit. The *Rousset* court stated:

A consent judgment is a bilateral contract wherein the parties adjust their differences by mutual consent and thereby put an end to a lawsuit with each party balancing the hope of gain against the fear of loss. LSA-C.C. art. 3071. As such, it should be governed by the same rules of construction that apply to contracts. *Nelson v. Nelson*, 08-85 (La.App. 5 Cir. 6/19/08), 985 So.2d 1285, 1290.

A compromise agreement which forms the basis for a consent judgment gets its binding force and effect from the consent of the parties. The interpretation of the consent judgment is the determination of the common intent of the parties. LSA-C.C. art. 2045; *Nungesser v. Nungesser*, 95-2298 (La.App. 1 Cir. 6/28/96), 694 So.2d 312, 314. The meaning and intent of the parties is

---

[4] By footnote, the panel explained:

Louisiana Code of Civil Procedure Article 224 defines constructive contempt of court as "any contempt other than a direct one[,]" whereas La.Code Civ.P. art. 222 defines contempt as "one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons, proof of service which appears of record."

*6th Ward/Crowley Gravity Drainage Dist.*, 229 So.3d at 596 n.5. (Alteration in original.)

ordinarily determined from the four comers of the instrument. *Millet v. Millet*, 04-406 (La.App. 5 Cir. 10/26/04), 888 So.2d 291, 293. Each provision in the contract is interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. When the words of a contract are clear and explicit and lead to no absurd consequences, the intent of the parties is to be determined by the words of the contract. LSA-C.C. art. 2046; *Sutherlin v. Sutherlin*, 05-535 (La.App. 5 Cir. 2/3/06), 930 So.2d 51, 53.

When the language of a contract is ambiguous it is proper to go outside the four comers of the instrument and use extrinsic evidence to determine the parties' intent. *Nelson v. Nelson*, 985 So.2d at 1290. LSA-C.C. art. 2053 provides that "a doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties."

### *Assignments of Error One and Two – Contempt of Court for Failure to Abide by Consent Judgments*

Mr. McEntyre's first two assignments of error contest the trial court's ruling holding him in contempt for failing to abide by the order of the trial court requiring back salary payments to Ms. McEntyre in the amount of $37,500.00. Both of these assignments of error will be addressed below.

The trial court specifically found "the 'Consent Judgment' by and between the parties dated June 18, 2014, and the 'Amended Consent Judgment' by and between the parties dated December 16, 2014, were voluntarily agreed to, executed and approved by the parties, and ratified by the Court[.]"

The trial court further found:

[T]hat (since these were "consent judgments" and not "considered decrees"), that [Mr. McEntyre] had at that time the means to comply with the terms thereof; and that as a result of the failure to comply with those terms . . . he must be found in [civil] contempt of the Orders of this Court and therefore punished for his willful contumacy in not abiding by the terms and conditions thereof "[.]"

The trial court relied in its ruling on La.R.S. 13:4206, which provides:

Failure to obey an order or judgment of court, when such order or judgment is in effect an order or judgment for the payment of money, shall not be construed as a contempt, if it appears that the failure to obey is due to inability to comply with the order or judgment which inability existed when the order or judgment was rendered.

The trial court also cited the case of *Trahan v. Trahan*, 16-108 (La.App 1 Cir. 9/16/16), 203 So.3d 447, in support of its finding of contempt against Mr. McEntyre for failing to pay Ms. McEntyre the remaining portion of her salary sought under the provisions of the two 2014 consent judgments. In *Trahan*, Ms. Trahan gained ownership of the couple's daycare business pursuant to both a December 2014 judgment and a May 2015 judgment. Ms. Trahan was ordered to pay Mr. Trahan a sum of money representing equalization of their community property assets as per the evaluation of the business in 2012. Ms. Trahan failed to pay Mr. Trahan as ordered, and he filed a rule for contempt against both Ms. Trahan and Trahan Enterprises. Ms. Trahan contended that she did not pay the May 2015 judgment due to her inability to pay the amount owed, pursuant to La.R.S. 13:4206, as stated above, and therefore she should not be held in contempt. The trial court ultimately held Ms. Trahan in contempt, finding that at the time the May 2015 judgment was rendered, she did have the ability to pay the amounts owed pursuant to La.R.S. 13:4206.

The appellate court concluded that Ms. Trahan's problem was that she claimed that the business had decreased in value from its original value determined in 2012. Therefore, due to the decline in her business, she claimed that she did not owe the amount in question to Mr. Trahan. Nevertheless, Ms. Trahan failed to challenge either the December 2014 judgment or the May 2015 judgment prior to the trial court's ruling. Accordingly, the appellate court found that "although the day care business may have been worth less in 2015 than when valued [in 2012],

9

such does not prove that Ms. Trahan's failure to pay the May 2015 [judgment] was 'due to an inability to comply with the … judgment[,] which inability existed when the … judgment was rendered." *Trahan*, 203 So.3d at 454. Noting that "[a] trial court's decision regarding a debtor's ability to pay a sum of money is a factual determination[,]" the panel found ample evidence in the record to support the trial court's ruling "that Ms. Trahan was able to pay the May 2015 judgment when it was rendered[.]" *Id.* at 453-54. It thus found that La.R.S. 13:4206 "did not preclude the trial court's November [24,] 2015 contempt charge against her." *Id.* 454.

In this case, the evidence introduced, and testimony given at the hearing indicated that Mr. McEntyre had consistently paid the $5,000.00 per month salary to Ms. McEntyre beginning on October 2013, up and until January 2015. When the original consent judgment of June 18, 2014 was signed by both parties, ordered by the trial court, and filed in the record, Mr. McEntyre was paying the required $5,000.00 per month. The amended consent judgment, dated December 16, 2014, did not change Mr. McEntyre's obligation to pay Ms. McEntyre the $5,000.00 per month as per the June 18, 2014 consent judgment. The December 16, 2014 amended consent judgment only contained additional provisions that pertained to a reduction in the amount owed by Mr. McEntyre to Ms. McEntyre based upon her sale of any of the three parcels of property located on Sandy Lake Road. Further, testimony by Ms. McEntyre at the hearing provided that Mr. McEntyre was employed all but ten days during 2015. Mr. McEntyre also testified that he was employed in 2015, doing construction, in addition to working as an iron worker, boiler maker, and a rigger. Thus, Mr. McEntyre was capable of making the payments to Ms. McEntyre as required until October 2015. In addition,

Mr. McEntyre also testified that McEntyre Consulting began making money again in March of 2017.

Like Ms. Trahan, Mr. McEntyre did not have to sign the amended consent judgment on December 16, 2014, as only shortly thereafter on January 24, 2015, he began paying Ms. McEntyre from his personal bank account. Mr. McEntyre could have raised the issue of the McEntyre Consulting's financial condition and the problems in the oil industry with the trial court before he signed the amended consent judgment. He also could have sought a reduction or a termination of the monthly payments to Ms. McEntyre due to the down turn in his business prospects. Instead, the amended consent judgment was signed by both parties, filed, and became an order of the trial court, and was not modified.

Mr. McEntyre claimed that on January 21, 2015, Ms. McEntyre sold a piece of property containing 54.44 acres, identified in the Partition as parcel number five, to H S & G Properties, LLC for $100,000.00. However, this property was not part of the three designated tracts located on Sandy Lake Road, and accordingly its sale had no impact on the monthly payment of $5,000.00 owed by Mr. McEntyre to Ms. McEntyre, as provided in the provisions of the two consent judgments at issue.

In further opposition to Ms. McEntyre's rule for contempt and to enforce the payment of her monthly salary, Mr. McEntyre argued that Ms. McEntyre also violated the consent judgments by donating a small portion of the property on the Sandy Lake Road to her son, Cody Johnson. The record evidence indicates that on April 22, 2015, Ms. McEntyre and Cody executed a power of attorney giving Ms. McEntyre power of attorney over Cody's affairs. Further, on April 22, 2015, Ms. McEntyre filed an act of donation in favor of her son Cody, giving him ownership of a 4.33-acre lot and a twenty-foot servitude next to the lot, both of which were

11

part of the Sandy Lake Road property, described under section number one of the Partition dated December 10, 2014. As Cody was unemployed, having been laid off from his work in the oilfield, both Ms. McEntyre and Cody testified that Ms. McEntyre was not compensated for the property described in the act of donation.

On September 17, 2014 Ms. McEntyre executed an act of donation inter vivos to Cody Johnson, giving him a lot containing approximately 3.45 acres, which was also a portion of parcel one of the Sandy Lake Road property as described in the Partition. Cody subsequently placed a trailer on the property and paid to have the act of donation recorded.

On September 1, 2015, Ms. McEntyre sold 54.48 acres of the Sandy Lake Road property described in the Partition as parcel number three to Joshua and Holly Allen for $93,480.00. Ms. McEntyre testified at the hearing that the sale reduced her final payment from Mr. McEntyre for October 2015 by $2,500.00 dollars leaving $37,500.00 as the amount sought by Ms. McEntyre in her rule.

According to the terms of the two consent judgments at issue, the only basis for a reduction in the $5,000.00 monthly payment owed by Mr. McEntyre was the sale of all or part of the Sandy Lake Road property, and he received a reduction in the amount owed based on the September 1, 2015 sale to the Allens. The two consent judgments do not mention any reduction for a donation of the Sandy Lake Road property, or for the sale of any other property contained in the Partition that was not part of the 131 acres located on Sandy Lake Road.[5] Accordingly, we find

---

[5] Ms. McEntyre also sold additional parcels of the Sandy Lake Road property after the termination of the consent judgments in October of 2015. On December 2, 2015, there was a cash sale to Joshua and Holly Allen of one acre for the amount of $3,000. On March 13, 2017, Ms. McEntyre sold property listed in the Petition to Jimmy D. and Misty J. Teague for $7,500.00. On July 20, 2017, she sold 54.48 acres to her son Cody Johnson for $68,400.00. None of these sales had any impact on the obligation of Mr. McEntyre to Ms. McEntyre to pay the $5,000.00

12

no manifest error in the trial court's ruling holding Mr. McEntyre in contempt of court for his failure to pay Ms. McEntyre the amount of $37,500.00 pursuant to the terms of the consent judgments, dated June 18, 2014 and December 16, 2014.

*Assignment of Error Three - Award of Judicial Interest*

Mr. McEntyre claims that there is no basis for the trial court's award of judicial interest from the date of judicial demand on the $37,500.00 awarded to Ms. McEntyre. This court agrees and finds that for the following reasons judicial interest on the award to Ms. McEntyre, which is contractual in nature, should only be awarded from the date of judgment, July 31, 2018.

Louisiana Code of Civil Procedure Article 1921 provides, "The court shall award interest in the judgment as prayed for or as provided by law." Louisiana Revised Statutes 13:4203 also provides, "Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, 'ex delicto', which may be rendered by any of the courts." However, the damages awarded to Ms. McEntyre are contractual in nature and flow from Mr. McEntyre's failure to fulfill his contractual obligation in the two consent judgments.

In *Preis v. Preis*, 95-352 (La.App. 3 Cir. 12/6/95), 664 So.2d 860, *writ denied*, 95-3096 (La. 2/28/96), 668 So.2d 368, a panel of this count found that interest on a judgment of partition of community property was to run from the date of the judgment and not the date of judicial demand. Although the case at issue presents a situation wherein Ms. McEntyre sought enforcement of the consent judgments which required Mr. McEntyre to pay a certain amount, we find that the two situations are similar. Both claims are contractual in nature and involve a

---

per month, as when the sales were transacted, the terms of the consent judgments had expired, and none of the properties sold were located on the Sandy Lake Road.

distribution of assets between the parties. Therefore, Mr. McEntyre's third assignment of error has merit. We, therefore, affirm as amended the trial court's judgment awarding judicial interest on the $37,500.00 payment to Ms. McEntyre from the date of judicial demand to the July 31, 2018 date of judgment.

*Assignment of Error Number Four - Payment of the Promissory Note*

Mr. McEntyre asserted in his briefing to this court that the Community Property Partition Agreement, signed by both parties on December 10, 2014 and filed in the conveyance records on December 12, 2014, is not a "court order," and thus does not provide a valid basis for the trial court to hold Mr. McEntyre in contempt. This court agrees. The trial court's judgment did not hold Mr. McEntyre in contempt in connection with the Partition, but did require him to comply with the terms of the Partition by paying or making the necessary arrangements to pay the amount remaining on the promissory note to the Bank, and to reimburse Ms. McEntyre the amount of interest she paid on the note to prevent a foreclosure.

The Partition clearly states that "Michael Aaron McEntyre agrees to sign a $50,000.00 promissory note in favor of Catahoula LaSalle Bank who currently holds the primary mortgage on the above referenced property." In the Partition Ms. McEntyre had assumed the debt of the immovable property she received, with the exception of the $50,000.00 promissory note to the Bank. According to the testimony of Ms. McEntyre, the clause requiring Mr. McEntyre to sign a $50,000.00 promissory note was required by the President of the Bank, James White, in order to release Mr. McEntyre from the mortgage held by the Bank. Ms. McEntyre further testified that Mr. McEntyre signed the $50,000.00 promissory note, but Ms. McEntyre testified that she had paid approximately $2,240.80 in

interest on the promissory note to avoid foreclosure. In her rule to enforce, she requested reimbursement from Mr. McEntyre for the interest paid.

Mr. McEntyre argues that the Partition of the couple's assets was not equal and that Mr. McEntyre gave Ms. McEntyre more than her share of the property that the couple owned. However, the Partition signed by Mr. McEntyre, and recorded in the conveyance records, clearly provides that Mr. McEntyre agreed to sign a promissory note to the Bank securing the immovable property given to Ms. McEntyre under the terms of the Partition. This commitment by Mr. McEntyre was specifically made in the Partition, despite other language to the effect that each party agreed to assume the debts of any assets now solely in their name. Therefore, Mr. McEntyre's assignment of error four is without merit.

### Assignment of Error Five – Assessment of Costs

Mr. McEntyre claims he should not have been assessed the costs of the proceedings, "considering all the errors assigned herein, and as such the casting of costs should be reversed and set aside." Louisiana Code of Civil Procedure Article 1920 provides in pertinent part, "Except as otherwise provided by law, the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." The trial court having ruled in favor of Ms. McEntyre pursuant to her rule for contempt and rule to enforce, we, therefore, affirm the trial court's judgment casting all costs against Mr. McEntyre.

### CONCLUSION

For the foregoing reasons, the July 31, 2018 judgment of the trial court granting Delores McCarthy McEntyre's Rule for Contempt and Rule to Enforce against Michael Aaron McEntyre is affirmed in its entirety, excepting that the judicial interest awarded to Delores McCarthy McEntyre shall run from July 31,

2018, the date of judgment, and not from May 5, 2017, the date of judicial demand.

All costs of this appeal are assessed to Michael Aaron McEntyre.

**AFFIRMED AS AMENDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules---Courts of Appeal, Rule 2-16.3.