NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

24-528

GARY STOUTE & LORI STOUTE

VERSUS

LUPE T. CAMACHO & POLLY CAMACHO

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 134792
HONORABLE LEWIS H. PITMAN, JR., DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Van H. Kyzar, Candyce G. Perret, and Gary J. Ortego, Judges.

AFFIRMED AND RENDERED.

**William Allen Repaske**
**Landry & Watkins**
**Post Office Drawer 12040**
**New Iberia, LA   70562-2040**
**(337) 364-7626**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
**Gary Stoute**
**Lori Stoute**

**Lucretia P. Pecantte**
**124 W. Washington Street, Suite B**
**New Iberia, LA   70560**
**(337) 374-1202**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
**Lupe T. Camacho**
**Polly Camacho**

**PERRET, Judge.**

This appeal stems from the trial court's grant of a motion for contempt filed in litigation involving ongoing disputes between neighbors, Gary and Lori Stoute ("the Stoutes") and Lupe and Polly Camacho ("the Camachos"). The trial court found that the Camachos violated a May 7, 2021 Judgment, prohibiting both parties from harassing the other party. The trial court found the Camachos in contempt of court and ordered them to pay $2,500.00 in attorney fees to the Stoutes' attorney, Mr. William Repaske. The Camachos appeal. After review, we affirm the trial court's judgment and award additional attorney fees to the Stoutes' for work performed on appeal.

**FACTUAL AND PROCEDURAL HISTORY:**

This litigation originated from the Stoutes' Petition for Permanent Injunction and for Damages filed on September 6, 2019, against the Camachos. It has since come before this court on a different motion for contempt in 2022. In that case, this court recited the history of the litigation:

> This litigation arose out of several disputes between neighbors, Lupe and Polly Camacho and Gary and Lori Stoute. On September 6, 2019, the Stoutes filed a Petition for Permanent Injunction and for Damages against the Camachos. The petition alleged the Camachos engaged in activities meant to harass the Stoutes in the peaceful possession of their property, including piping rainwater from the Camacho residence across their property to the boundary line with the Stoutes' property, causing excessive flooding of the Stoutes' property, eroding the footings of the Stoutes' fencing, shining lights at the Stoutes' house and other acts meant to harass the Stoutes.
>
> On October 14, 2019, the Camachos filed an Answer and Reconventional Demand. In the reconventional demand, the Camachos alleged the Stoutes harassed them with numerous phone calls and texts, removing drainage pipes, calling the police unnecessarily, and interfering with the drainage of the Camachos' property.

A trial was held on December 18, 2020, following which the trial court took the matter under advisement. On February 23, 2021, the trial court on its own motion, appointed Jim Foret, a horticulturist, as an expert on the issue of water drainage to independently examine the situation. The Camachos and Stoutes were ordered to cooperate with Mr. Foret in his assessment of the dispute. Mr. Foret forwarded a report to the trial court on April 1, 2021. . . .

. . . .

On May 7, 2021, the trial court issued a Judgment accompanied by written reasons for judgment. . . .

*Stoute v. Camacho*, 22-226, pp. 2–3 (La.App. 3 Cir. 11/2/22), 352 So.3d 1057, 1158–59. Relevant to the current appeal, the May 7, 2021 Judgment issued a reciprocal injunction "enjoining [the Stoutes] and [the Camachos], themselves individually and/or their house guests, from harassing the other party and/or their house guest."

On July 18, 2022, the Stoutes filed a Motion and Order for Contempt alleging that Lupe Camacho had violated the May 7, 2021 Judgment by "repeatedly using lawn equipment to blow leaves and debris from his property onto the Stoute[s'] property" and by, again, constructing "a system of pipes directing water from his roof to [the Stoutes'] side of the Camacho property." The Stoutes sought to have Lupe Camacho held in contempt of court and sanctioned, specifically requesting attorney fees and court costs.

On August 18, 2022, the Camachos filed a Rule for Contempt of Court, alleging that Gary Stoute violated the May 7, 2021 Judgment in the following manner:

blowing leaves and debris underneath [the] fence onto [the] Camachos' property, aiming grass and leaves toward the fence during mowing and lawn work, dumping items onto [the] back of [the] Camachos' property behind [the] fencing, repeatedly taking pictures of their property by taking down fence boards . . ., pushing fence and fence-pole of the fencing at back of the property in order to take pictures of [the] Camachos' property, preventing [the

2

Camachos] from doing any repairs to minimize damage on their property, remov[ing] tie-downs on [an] elevated pipe, putting items inside end of [the] pipe near ditch to prevent gutters from draining into [a] front road ditch (stopping flow of water), pulling on [the] gate and breaking [the] gate and blocking drainage with boards and dirt causing water to back-up on [the] concrete driveway causing damage to [the] concrete as well as draining back roof & patio & small building toward [the] Camacho property, causing water damage to the Camachos.

Thus, the Camachos filed a reciprocal motion for contempt against Gary Stoute seeking to have him punished according to law and held responsible for their attorney fees and court costs.

The reciprocal motions for contempt were heard on September 29, 2023. The trial court produced Reasons for Judgment that thoroughly summarized the evidence and testimony at the hearing, discussed the applicable law, and provided reasons for its judgment. In its Judgment on Rule, signed February 22, 2024, the trial court found both Lupe Camacho and Gary Stoute in contempt for blowing leaves from their property onto the other's in violation of the May 7, 2021 Judgment. This finding offset any punishment and penalty to either party. The trial court then found Lupe Camcho in contempt for intentionally blowing dust onto the Stoutes' property in violation of the May 7, 2021 Judgment and ordered Lupe Camacho to pay $2,500.00 in attorney fees to Mr. Repaske as well as all costs of court associated with the reciprocal motions. Finally, all other allegations of contempt in the reciprocal motions were denied.

Notice of Judgment was mailed on February 26, 2024, and the Camachos filed a motion for appeal on March 12, 2024. On appeal, the Camachos assert two assignments of error:

1. The trial court erred by granting appellees' Motion and Order for Contempt and finding Lupe T. Camacho and Polly Camacho in Contempt of Court and not holding the appellees in Contempt of

3

Court for harassing the appellants by taking pictures of their property pursuant to the Judgment dated May 7, 2021.

2. The trial court erred by awarding attorney fees in the amount of $2,500.00 to appellees' attorney.

The Stoutes filed an answer to the appeal with their opposition, asserting they will incur additional attorney fees due to the appeal and, thus, they request an increase in the amount of attorney fees awarded.

**DISCUSSION:**

There are two kinds of contempt of court: direct contempt and constructive contempt. La.Code Civ.P. art. 221. This case involves constructive contempt. Louisiana Code of Civil Procedure Article 224(2) defines constructive contempt as "any contempt other than a direct one.[1] Any of the following acts constitutes a constructive contempt of court: . . . . (2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of the court[.]"

> Although a district court has discretion to determine whether to find a person guilty of constructive contempt of court, a finding that a person wilfully [sic] disobeyed a court order in violation of La.Code of Civil Proc. art. 224(2) must be based on a finding that the accused violated an order of the court "intentionally, knowingly, and purposefully, without justifiable excuse."

*Lang v. Asten, Inc.*, 05-1119, p. 1 (La. 1/13/06), 918 So.2d 453, 454 (quoting *Brunet v. Magnolia Quarterboats, Inc.*, 97-187, p. 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313, *writ denied*, 98-990 (La. 5/29/98), 720 So.2d 343).

The appellate courts review a trial court's finding of contempt for abuse of discretion. *Boudreaux v. Boudreaux*, 22-804 (La.App. 3 Cir. 7/5/23), 368 So.3d 754. "However, the trial court's 'predicate factual determinations are reviewed under the

---

[1] "A direct contempt of court is one committed in the immediate view and presence of the court and of which it has personal knowledge, or a contumacious failure to comply with a subpoena or summons[.]" La.Code Civ.P. art. 222.

4

manifest error standard.'" *6th Ward/Crowley Gravity Drainage Dist. v. Benoit*, 17-82, p. 9 (La.App. 3 Cir. 10/4/17), 229 So.3d 590, 596 (quoting *Capital City Press, L.L.C. v. La. State Univ. Sys. Bd. of Supervisors*, 13-1803, 13-1804, p. 7 (La.App. 1 Cir. 12/30/14), 168 So.3d 669, 674).  It is the mover's burden to prove contempt by a preponderance of the evidence.  *Boudreaux*, 368 So.3d 754.

**Finding of Contempt:**

Lupe Camacho was found in contempt for harassing the Stoutes in violation of the May 7, 2021 Judgment in two ways:  (1) by blowing leaves from the Camachos' property, under the fence, and onto the Stoutes' property, for which no punishment was ordered; and (2) for "intentionally causing dust to be blown onto the Stoutes' property[.]"

1. Contempt due to leaves.

The Stoutes submitted evidence that included date stamped photographs of the fence with leaves piled up on the Stoutes' side and photographs of the Camachos' property with leaves seemingly cleared from the fence area.  They also submitted a video with the sound of a lawn mower being operated on the Camacho side of the fence while leaves came under the fence onto the Stoutes' property.  Gary Stoute also testified that he would go out and clear leaves from under the fence that had collected and clear his side of the fence of leaves.

The Camachos also submitted video evidence of leaves being cleared from under the center of the fence by a person on the Stoutes' side of the fence, and then blown back onto the Camachos' side.  The sound of a leaf blower is heard on the video.  In the video, leaves are piled up on the Camachos' side of the fence.

The trial court found that "[e]ach party has sufficient video and/or photographic evidence to prove their allegations as to leaves being blown from

5

underneath the fence." The trial court continued, "Stoute on at least three different occasions and Camacho on at least five different occasions, harassed the other by blowing leaves underneath the fence into the others' property." Based on the evidence, this court cannot say that the trial court erred in finding both parties in contempt for blowing leaves onto the others' property.

2. Contempt due to dust.

Regarding allegations that the Camachos intentionally blew dust onto the Stoutes' property, the Stoutes submitted a photograph of dust collected on the Stoutes' patio table and Lori Stoute testified that she recalls one day when a mower was heard on the other side of the fence for several minutes, not moving, and dust was blowing over the fence into her yard. The Stoutes alleged that the dust required their pool to be cleaned. Both parties also relied on the same video of Lupe Camacho mowing his yard—the Camachos claim this video shows they did not mow in a manner that disturbed the Stoutes, while the Stoutes rely on this video to prove the Camachos sent dust into their yard. The video shows Lupe Camacho riding his lawn mower on the dirt near the fence line, with a cloud of dust being sent into the air and over the fence. The mower passes several times over the dirt yard and around the trees in areas with dirt only and does not show the mower passing over the grass area.

Although Lori Stoute's recollection of when the dust event occurred that required her pool to be cleaned was different from Gary Stoute's, Lori was unsure of the date and the video evidence does show that the way Lupe Camacho mowed created a dust cloud that traveled over the fence. The Stoutes' testimony was also that they did not cover their pool in winter. Additionally, the photograph of the dust collected on the Stoutes' patio table corresponds to Gary Stoute's recollection of the event. The Camacho video relied upon by both parties was not date stamped.

6

On this issue the trial court first summarized the evidence submitted and then found Lupe Camacho in contempt:

> Lori Stoute['s] testimony establishes Lupe was operating his riding lawn mower causing dust to fly and be blown onto her (Stoute) property. Plaintiff (Stoute) exhibit 10 establishes there is a clear grassless dirt area between the fence and row of oak trees on the Camacho property. Exhibit 11 shows this dust collecting on a patio tablet on the Stoutes['] property.

> Camacho exhibit 8 is the Camacho security camera video of [the] Camacho side of the fence with Lupe operating a riding lawn mower raising dust over property clear of grass or leaves, only dirt. By this video, Lupe knew he was operating his riding lawn mower in an area with only dirt[,] causing dust to fly towards the Stoutes' property.

> Lori Stoute testified Lupe operated his riding lawn mower for 3 to 5 minutes; causing dust. The dust settled in the Stoutes' in ground pool, which took weeks to clean, as well as on the patio table (exhibit 11) .

> For Lupe Camacho to operate a riding lawn mower upon an open dirt area, without grass or leaves, is not mowing the lawn. It is an intentional act to cause dust to be blown [onto] the Stoutes['] property. The Court finds Lupe Camacho, by causing dust to be blown upon the Stoutes' property requiring them to take weeks to clean their swimming pool, is in violation of the Court's judgment enjoining Lupe Camacho ". . . from harassing the other party . . .".

Based on this evidence we cannot say the trial court erred in finding that Lupe Camacho was in contempt for "intentionally causing dust to be blown onto the Stoutes' property[.]"

3. Failure to find the Stoutes in contempt:

Also in their first assignment of error, the Camachos allege the trial court erred in not finding the Stoutes in contempt, specifically for taking pictures of the Camachos' property. The Camachos' Rule for Contempt of Court alleged that Gary Stoute violated the trial court's judgment and harassed them by "repeatedly taking pictures of their property by taking down fence boards to take pictures of Camachos'

property" and "pushing fence and fence-pole of the fencing at back of the property in order to take pictures of Camachos' property[.]"

At the hearing, the Camachos submitted photographs of Gary Stoute taking photographs of the Camacho property into evidence. One photograph depicts Gary Stoute leaning around the fence with a camera held to his face. Another is a trail camera still that shows a person taking a photograph towards the trail camera. Gary Stoute testified that their fence is set back from his property line and that he took photographs to evidence the Camachos' violations of the judgment. He also testified that he never pushed on the fence to take photos but would rest his wrist on the fence and take photographs through the holes in the fence.

The trial court, in its Reasons for Judgment, stated that "Camachos' allegation (e), repeatedly taking pictures of their (Camacho) property by taking down fence boards was not established; since it is the Stoutes' fence and the Stoutes can remove the boards."

Based on the evidence, we find no error in the trial court's factual finding that Gary Stoute did not violate the court's judgment.

**Attorney Fees:**

In their second assignment of error, the Camachos argue that the trial court erred in awarding $2,500.00 in attorney fees because the amount is more than Mr. Repaske's fees introduced as Exhibit 29, or if the amount is a fine, the fine cannot be more than $500.00 per La.R.S. 13:4611. Furthermore, the Camachos emphasize that Gary Stoute testified he *anticipates* having to pay his attorney. In support, the Camachos cite *Dazet Mortgage Solutions LLC v. Faia*, 12-486 (La.App. 4 Cir. 4/10/13), 116 So.3d 711, *writ denied*, 13-1046 (La. 6/21/13, 118 So.3d 1095.

In its review of an award of attorney fees for the prior finding of contempt against the Camachos, this court explained:

> Since the rendition of *Dazet*, the Louisiana Legislature via La. Acts No. 132, § 2, amended La.R.S. 13:4611, to add paragraph (1)(g), which provides "[t]he court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section." Thus, as noted by the Louisiana Supreme Court in *Luv N' Care, Ltd. v. Jackel Int'l Ltd.*, 19-749 (La. 1/29/20), 347 So.3d 572, 578, "the attorney fees provision of Subparagraph (1)(g) is necessarily one of the punishments referenced by the first sentence of Paragraph (1), which a court is authorized to impose on *a person adjudged guilty of a contempt of court*." Accordingly, the trial court was authorized to award attorney fees in this matter.

*Stoutes*, 352 So.3d at 1061–62.

> Louisiana Revised Statutes 13:4611 (emphasis added) states:
>
> (1) The supreme court, the courts of appeal, the district courts, family courts, juvenile courts and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
>
> . . . .
>
> (d)(i) For any other contempt of court . . . by a fine of not more than five hundred dollars, or imprisonment for not more than three months, or both.
>
> (ii) In addition to or in lieu of the penalties provided by this Paragraph, the court may order that the person perform litter abatement work or community service in a court-approved program for each day he was to be imprisoned, provided that the total days of jail, litter abatement work, and community service do not exceed the maximum sentence provided by this Paragraph.
>
> . . . .
>
> **(g) The court may award attorney fees to the prevailing party in a contempt of court proceeding provided for in this Section.**

The trial court reviewed Mr. Repaske's fees entered into evidence. The bill was dated September 28, 2023, the day of the hearing, in the amount of $2,205.00. Mr. Repaske charged $225.00 per hour for his services. The bill included trial prep on the day before the hearing, but did not include any charges for the hearing itself.

According to the court minutes, the September 28, 2023 hearing continued in excess of two hours. Based on the evidence submitted, we find no error in the trial court's determination of attorney fees in the amount of $2,500.00.

Furthermore, the Camachos assert that this allegation was not pled in the Stoutes' Motion and Order for Contempt of Court. It is unclear if the Camachos make this claim about the attorney fees or the fine, however, a distinction in this case is irrelevant because the Stoutes sought "sanctions" for the violation of the judgment. The Stoutes' July 18, 2022 pleading clearly sought attorney fees: "Lupe Camacho should be held in contempt of Court and sanctioned accordingly, including payment of movers' attorney fees and costs of Court, for his failure to abide by the Court's Order." The Stoutes' memorandum also stated, "He should be held in contempt and sanctioned accordingly, including imposition of reasonable attorney fees . . . ." Thus, we find this assignment of error lacks merit.

**Answer to Appeal:**

As they did in their prior appeal, the Stoutes answer the Camachos' appeal and request additional attorney fees for services necessitated by this appeal, citing *Vander v. Safeway Insurance Co. of Louisiana*, 08-888 (La.App. 3 Cir. 2/25/09), 5 So.3d 968. This court previously recognized that "[a]n award for additional attorney fees is proper for work necessitated by the appeal when an award for attorney fees is granted at the trial level." *Stoutes*, 352 So.3d at 1062. The trial court awarded attorney fees and the Stoutes have successfully defended this appeal. Thus, we find that an additional award of $1,500.00 is appropriate.

**DECREE:**

After review, we affirm the trial court's judgment and amend the award to include additional attorney fees of $1,500.00 for work performed on this appeal. All costs of this appeal are assessed against Lupe and Polly Camacho.

**AFFIRMED AND RENDERED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.